## THE HANNIBAL AND ST. JO RAILROAD COMPANY
## v.
## ELIZABETH MARTIN.

1. CARRIERS OF PASSENGERS—ACTS OF SERVANTS.—When a passenger enters a car by the invitation of an employe of the railroad company, or in obedience to an announcement that the cars are ready to receive passengers, the relation of passenger and carrier is created.

2. LIABILITY OF ONE ROAD FOR ACTS OF SERVANTS OF ANOTHER.— Where a railroad company operating its road in its own name contracts with another company to make up its train in the depot of the latter, the former company is liable for an injury to a passenger occurring on its train while being made up by the servants of the latter, and it makes no difference that the servants were employed and paid by the latter road.

3. ADMISSIONS OF CONDUCTOR.—An admission or statement by the conductor of the train, made after the accident occurred, in reference to the cause of the accident, is not admissible in evidence against the defendant company.

APPEAL from the Circuit Court of Adams county; the Hon. J. H. WILLIAMS, Judge, presiding. Opinion filed September 26, 1882.

Messrs. MARSH & McFADON, for appellant; that it was error to admit in evidence the statements of the conductor, made after the accident happened, cited 1 Greenl'f's Ev. § 113; Story on Agency, § 134; Angell & Ames on Corpora-

tions, § 309; Verry v. B. C. R. & M. A. Co. 47 Iowa, 549; M. C. R. R. Co. v. Gougar, 55 Ill. 506; Lane v. Bryant, 9 Gray, 247; C. & N. W. R. R. Co. v. Fillmore, 57 Ill. 266; Furst v. Second Ave. R. R. Co. 72 N. Y. 544; C. B. & Q. R. R. Co. v. Riddle, 60 Ill. 534; C. B. & Q. R. R. Co. v. Lee, 60 Ill. 503; Luby v. H. R. R. R. Co. 17 N. Y. 131; Pittsburg R. R. Co. v. Theobald, 51 Ind. 246; Rogers v. McCune, 19 Mo. 562; Whitaker v. Eighth Ave. R. R. Co. 51 N. Y. 299; Robinson v. R. R. Co. 7 Gray, 97.

Opinions of experts as to the probable results of plaintiff's injuries are not admissible:   Hutchinson on Carriers, § 805; Shearman & Redfield on Negligence, § 597.

Damages for mental suffering can not be allowed:  2 Greenl'f's Ev. § 267; Ill. Cent. R. R. Co. v. Sutton, 53 Ill. 399.

It was error to instruct the jury that they might find as plaintiff's damages the expense of being cured, there being no evidence as to such expenses:  Ill. Cent. R. R. Co. v. Frelka, 9 Bradwell, 605; Ill. Cent. R. R. Co. v. Benton, 69 Ill. 175; Nichols v. Bradsby, 78 Ill. 44.

The fact that plaintiff may have heard one of appellant's servants announce that the train was ready did not justify her in going upon the train:  C. B. & Q. R. R. Co. v. Sykes, 96 Ill. 172; C. & A. R. R. Co. v. Randolph, 53 Ill. 514.

The damages are excessive:  C. R. I. P. R. R. Co. v. Payzant, 87 Ill. 130; Kepperley v. Ramsden, 83 Ill. 356.

Messrs. Ewing & Hamilton, for appellee; that the statements of the conductor were admissible as part of the *res gestæ*, cited Abbott's Trial Evidence, 44; 1 Greenl'f's Ev. § 113; Bank of Monroe v. Field, 2 Hill, 445; Bass v. C. & N. W. R. R. Co. 42 Wis. 654; H. & B. M. R. R. Co. v. Decker, 82 Penn. 119.

These statements were not material and did not produce the verdict, and therefore were not error:  Deniston v. Hoagland, 67 Ill. 265; Thompson v. McLaughlin, 66 Ill. 407; Creote v. Wiley, 83 Ill. 444; Carpenter v. Davis, 71 Ill. 396.

The experts had a right to give their opinions as to the probability of a recovery:  Abbott's Trial Ev. 600; E. N. N. R. R. Co. v. Henderson, 51 Penn. 320; Bryant v. Trimmer, 47 N. Y. 96; Creote v. Wiley, 83 Ill. 444.

The jury may consider plaintiff's suffering of body and mind in estimating damages: I. & St. L. R. R. Co. v. Stables, 62 Ill. 320.

A passenger has a right to rely upon the reasonable directions of the conductor: C. B. & Q. R. R. Co. v. Sykes, 96 Ill. 172.

The damages are not excessive: Ill. Cent. R. R. Co. v. Parks, 88 Ill. 373; Ill. Cent. R. R. Co. v. Cunningham, 67 Ill. 316; C. W. Div. Ry. Co. v. Hughes, 69 Ill. 170; C. & A. R. R. Co. v. Wilson, 63 Ill. 167; C. & A. R. R. Co. v. Murray, 71 Ill. 601; P. C. & St. L. R. R. Co. v. Thompson, 56 Ill. 138.

HIGBEE, J. This suit was brought by appellee to recover for a personal injury received by her while a passenger on appellant's cars.

On the 16th day of February, 1880, appellee and her husband bought coupon tickets entitling them to a passage by rail from Canton, Illinois, to Nickerson, Kansas. One coupon of the tickets was from Quincy to Kansas City, over appellant's road.

On the evening of the same day appellee and her husband arrived at Quincy, and were there detained until ten o'clock of the same night, when they left on appellant's road for Kansas City.

Appellant has no track or depot on the east side of the Mississippi river, but after crossing the bridge, its passenger trains run into the depot of the Chicago, Burlington & Quincy Railroad Company, over its track. By agreement of parties, all switching in the yard and making up trains is done by the employes of the latter company, and when the trains are made up and ready to leave, appellant's employes then take charge of them.

When the train was being made up, some one, whom appellee thinks she afterward saw on the train as conductor, announced that the train was ready, whereupon appellee and her husband followed several others to the south end of the platform and entered the rear car. Finding the same full of passengers, they passed on to the next car in front, and not finding any

vacant seats, went on to the north end of the third car where appellee found a seat, but her husband and ten or fifteen other passengers could get no seats and had to stand up. A brakeman told the passengers to be patient a moment and they would put on another car. Just then a car was backed down against the one appellee was on, and the brakeman announced that the car was ready, when appellee attempted to enter the same and fell between the cars and was severely injured.

At the time of the accident the front cars were attached to the switch engine, and an effort being made to couple the cars, which was then unsuccessful, but soon after accomplished.

The first assignment of error, we will notice, questions the action of the court, in modifying appellant's fifteenth instruction before giving the same to the jury. The substance of that instruction was, that if the jury believed from the evidence that appellant had, on the night appellee was injured, a platform in the Chicago, Burlington & Quincy depot at Quincy, designated by it for the reception of passengers, and that appellee was injured while said train was being made up and before it had been put in position to receive passengers, then that the relation of passenger and carrier did not at the time of the injury subsist between appellant and appellee, and the jury should find for the defendant.

The court refused to give this instruction as asked, but gave it as modified by adding the following words: "Unless the jury further believe from the evidence that the agent or servant of the defendant had notified plaintiff that said train was ready for the reception of passengers, and that in pursuance of such notice, said plaintiff had got on said train of cars before she received the alleged injury, if the jury believe from the evidence she received any injury."

The three rear cars stood on the track by the side of the platform used by the Hannibal & St. Jo. Railroad, and the evidence tends strongly to show that at or about the usual time of the departure of the train, it was announced by one of the employes of appellant, most probably, from the evidence, the conductor, that the train was ready; when appellee and her

husband followed several others aboard of the cars and found all three of them filled with passengers.

If a person, holding a ticket entitling him to a passage on the train, may not enter the cars and become the passenger of the common carrier under such circumstances, it is difficult to see just when and how the relation of passenger and carrier could be created.

We see no error in the modification of this instruction.

Appellant also assigns for error, the giving appellee's third instruction, as follows: " Although the jury may believe from the evidence that the defendant's train of cars, testified about by the witnesses in this case, was made up by the servants and employes of the Chicago, Burlington & Quincy Railroad Company, and that such servants and employes had the control and management of said cars until said train was made up and ready to start on its run over the defendant's road, still, if the jury further believe from the evidence that said servants and employes of the Chicago, Burlington & Quincy Railroad Company so made up and had control of said train and cars with the consent of the defendant, and under an agreement between the defendant and said Chicago, Burlington & Quincy Railroad Company, then the court instructs the jury that, for the said purpose of making up and managing said train and cars until said train was ready to start on its regular run, the said servants and employes of the Chicago, Burlington & Quincy Railroad Company, so engaged, were the servants and employes of the defendant."

Appellant was a common carrier of passengers and property between Quincy and Kansas City for hire, and as such it was its duty to manage its trains by careful, sober and skillful servants. It alone had the power to employ and remove the servants by whom its trains were managed, and it must be held responsible for their conduct.

It matters not whether these servants in the management of its trains, on the road upon which they ran and over which appellee's ticket entitled her to pass, were employed and paid personally by the officers of appellant road, or by some other person or corporation employed by appellant to have the service performed for it.

Appellant operated its road in its own name and for its own gain, and the fact that it contracted with the C. B. & Q. to do its switching or even operate its trains, can not relieve it from its responsibility to the public as a common carrier.

It contracted with appellee to safely carry her from Quincy to Kansas City, and when she entered the car and became a passenger upon appellant's road, it became liable for her safe transportation, and for all negligence of those whom it had authorized to manage its trains for it.

It is also contended by appellant that the trial court erred in permitting appellee and her husband to testify to the declarations of Griswold, the conductor of appellant's train, made after the accident had occurred. Hugh Martin, the husband of appellee, testified that his wife was unconscious for about one hour after the accident; that after she returned to consciousness they had a conversation with Griswold, the conductor on the train, in reference to the accident. Said witness was permitted to testify, against the objections of appellant, as follows: " The conductor inquired in regard to how the matter occurred; it seemed he did not know anything about it. I told him how it occurred; said he, it is carelessness. He said there had been a great deal of carelessness or recklessness, something of that kind, on the part of the *attaches* of the road. If you want me to tell all of it, he said really he felt afraid himself, and he wanted to get our names to report to headquarters."

Appellee also testified, against a like objection, that in the conversation referred to by her husband the conductor said that " the men or the hands on the road had become so reckless that they ought to be reported, and he would report them. He said we ought to prosecute them because they had become so reckless."

It is a sufficient reason why this evidence should not have been admitted, that the conductor was talking about a matter he knew nothing, personally, about, so far as he referred to the accident by which appellee was injured.

It is insisted by appellee's attorney, that this evidence was admissible as a part of the *res gestæ* of the accident by which

she was injured. To be receivable upon this ground, the declarations must have been made at the time the accident occurred, and have reference to that transaction. Most of the statements refer to other transactions, and have no reference to the accident by which appellant was injured.

These declarations were by appellant's servant, not in the course of his duty, made—not under oath—about a matter in reference to which he was competent to testify as a witness.

They did not accompany the principal act, or tend in any way to elucidate it, nor were they a part of the *res gestæ*. They are no more competent because made only a short time after the accident had occurred, than if made a year after.

When the principal transaction was ended, from that moment the servant had no authority to bind his principal by anything he might see proper to say about it. His evidence was the merest hearsay, and should not have been admitted.

These declarations were of a character most damaging to appellant, and the court having admitted them as competent proof, the jury, in the sharp conflict in the evidence as to the manner in which the accident occurred, would be likely to regard them as the admissions of appellant, made by its authorized servant or agent, and therefore binding upon it.

That the declarations of the conductor, that the road was so carelessly or recklessly managed that he was afraid of it himself, had a damaging effect upon the rights of appellant, is demonstrated in a verdict for damages which we regard as large for the injury received by appellee.

Judgment reversed, and cause remanded.

Reversed.