[No. 5926.]

## THE DENVER AND RIO GRANDE RAILROAD COMPANY v. DERRY.

1.   **Railway Company — Duty to Blind Passenger —** Where a railway company accepts as a passenger a blind man who travels without an attendant, knowing his infirmity, it is under duty to exercise at least reasonable care for his safety. The evidence examined, and held to convict the employees of the railway company of negligence, and acquit the passenger of contributory negligence.—(589)

2.   **——Who is a Passenger —** According to the course of travel upon defendant's railway, a sleeping car belonging to the Pullman company was, each day, left at Salida by the west-bound train, and taken up by the east-bound train at ten o'clock at night. Passengers arriving at Salida from Ouray and other western stations at 8:30 p. m. were, with the knowledge and approval of defendant, permitted to enter the sleeper at once. Plaintiff, a blind man traveling upon a through ticket from Ouray to Denver, was at Salida taken by the train porter from the train by which he arrived to the sleeping car. In attempting to enter the sleeper he was, owing to the negligence of the porter of that car, injured. Held, that plaintiff was a passenger, while going from the train to the sleeper and while attempting to enter the sleeper.—(591, 592)

3.   **——Liability for Negligence of Employees of Sleeping Car—** A railway company is liable for the negligence of the employees of another company operating a sleeping car which forms part of its train.—(590)

4.  ——Ticket—Presumptions — In the absence of anything appearing to the contrary a railway ticket is presumed to have been issued for a consideration.  One who presents it, and is permitted to travel upon it, must be regarded and treated as a passenger for hire, though he obtained the ticket from another and, so far as appears, paid nothing for it.—(588)

*Appeal from Chaffee District Court*—Hon. MORTON S. BAILEY, Judge.

Messrs. VAILE & WATERMAN, Mr. ELROY M. CLARK, Mr. C. A. CHAMBERLIN, and Mr. WILLIAM W. FIELD, for appellant.

Messrs. POTTER & BANKS, and Mr. FLOYD F. WALPOLE, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

From a judgment rendered against the defendant railroad company in favor of plaintiff Derry, as compensation for personal injuries suffered by him as the result of the negligence of its employees, this appeal is prosecuted.  Derry is, and for many years has been, totally blind.  He is a merchant living in Ouray, Colorado, and often traveled upon defendant's railroad in carrying on his business, and was well known to defendant's conductors and trainmen, who were aware of his infirmity.  He boarded defendant's train at Ouray, Colorado, for a journey to Denver, having a round-trip, first-class, railroad ticket.  The first part of the journey was by a narrow gauge train from Ouray to Salida.  The second part by a standard gauge train from Salida to Denver.  At Salida, through passengers left the narrow gauge train, which arrived about 8:30 p. m., and had to wait there about an hour and a half for a through train from the West, which carried the narrow gauge passengers thence to Denver.  At Montrose, *en route* to Salida, plaintiff bought of defendant's agent a

berth, which entitled him to accommodations in a Pullman palace sleeping car, which, though owned by another company and managed and cared for by its own employees, was to be attached to, and form part of, defendant's train from Salida to Denver. It was customary for defendant to carry on its west-bound trains from Denver a standard gauge sleeping car, which was taken off at Salida and left standing near the depot on one of defendant's tracks in its yards, to be attached to defendant's east-bound train leaving Salida for Denver about ten o'clock at night. Defendant's train reached Salida on schedule time. He alighted therefrom, with the help of the porter of the train, having previously requested the porter to take him to his sleeping car, and stood waiting by the side of the car until the porter had finished his duties in connection with assisting other passengers. It was a general custom of defendant, or the Pullman employees, with which the traveling public, including plaintiff, was familiar, to open this sleeping car and have it ready for the reception of passengers from the narrow gauge train destined to Denver, and who were supplied with tickets therefor, immediately upon their arrival, without requiring them to sit in the railway station or depot till the arrival of the connecting train from the west. Whether this custom was adopted by the sleeping car company upon its own initiative, or at the request of the railroad company, is not important. It was known to and recognized by the railroad company, and there is no evidence that it ever had objected thereto. Upon the night in question, after all the passengers had alighted from the narrow gauge car upon its arrival at Salida, and defendant's train porter had finished his duties in connection therewith, in compliance with the previous request, he assisted plaintiff and accompanied him to the sleeping car, which was, as usual,

standing on a side track and ready for ticket holders, and which was to be attached to, and form a part of, defendant's east-bound train to Denver upon its arrival from the west; and the train porter delivered plaintiff to the Pullman porter, who was standing by its steps, at the end where the passengers were to enter, with a lighted lantern in his hand, ready to assist passengers supplied with berth tickets. There is some question as to whether the Pullman conductor was present. However that may be, the Pullman porter was informed by the plaintiff himself that he was blind, and a request was made of him by plaintiff in which another person present joined, for assistance into the car. The Pullman porter took hold of plaintiff's elbows and assisted him upon the lower step of the platform leading into the sleeping car. Plaintiff was carrying his overcoat thrown over his left arm and carrying his hand bag in his right hand. Believing, as he says, that the passageway into the car was safe and unobstructed, and supposing that he was being watched and guided by the Pullman porter, plaintiff proceeded up the steps, feeling his way along as best he could. When he reached what seemed to him to be the proper opening from the platform into the car, he stepped into the same, but it proved to be the passageway from the end of the platform away from the door of the car instead of into it, the same having been left open and not closed by a gate as was the usual custom at such times. The result was that plaintiff fell violently between the tracks and received the injuries to his arm for which he asks compensation in this action. The particular acts of negligence upon which he relies, as stated in the complaint, are that the Pullman porter, knowing of his infirmity, did not accompany him up the steps and into the car, or watch and guide his movements, and that defendant, through its em-

ployees, was negligent in that the gate was not closed, which, had it been in its proper place, would have prevented him from stepping from the front, or end, of the platform of the car.

As a preliminary objection, defendant, upon this review, contends that its liability to plaintiff is only that which was due him as a passenger riding on a free pass, which relation thereby created, if it does not entirely relieve defendant of all liability for negligence, imposes a duty different from that which rests upon it towards a passenger for hire. The record does not present such a case. Plaintiff had in his possession a first-class round-trip ticket Ouray to Denver on defendant's road. He did not himself purchase this ticket or pay the railroad company directly therefor. It was issued, however, by the railroad company to another person and by him delivered to plaintiff. Whether the railroad company received a consideration for the ticket the record does not disclose, but, in absence of proof to the contrary, we are entitled to presume that it did. Counsel are mistaken in supposing that they made an offer to show the nature of the transaction concerning the ticket, or that a claim was made below that the ticket was issued by the company and received by plaintiff as a gratuity. The case therefore is as if plaintiff was a passenger for hire. The agents of the railroad company took his ticket when he presented it for passage and he was entitled to the care and protection which the contract for carriage, evidenced by the ticket, gave him.

It may be that a railroad company is not bound to receive as a passenger one who is helpless or blind, or otherwise incapable of properly caring for himself, unless accompanied by a competent attendant. It may also be true that the care to be observed by one who is blind, traveling alone upon railroad

trains, is greater than that required of one without such infirmity. But when the railroad company accepts as a passenger one whom it knows to be incapable of taking proper care of himself, and who has no attendant, it must certainly use at least reasonable care and diligence for his safety, and if it fails to do so, it is negligent.—*Hanks v. C. & A. Ry. Co.*, 60 Mo. App. 274. No greater, or different, liability was imposed cn defendant at the trial.

The objections to the rulings of the court in admitting and rejecting evidence and certain alleged rulings upon the pleadings and to the verdict are not of sufficient importance to merit separate discussion. If there was no error with respect to the assignments of negligence of defendant, and of contributory negligence of plaintiff, and to the rulings and instructions of the court with reference to the liability of defendant for the acts of employees of the sleeping car company, none of the other rulings of the court constitute error.

We discuss the questions of negligence together. It is said by defendant that plaintiff, knowing of his physical infirmity and of the dangers attending his movements in getting upon the car, was guilty of contributory negligence in attempting to enter the car without the active and continuous assistance of the Pullman porter; and it is further said, but not very seriously argued, that negligence on the part of the Pullman porter was not established. Whether or not, in the circumstances disclosed by the evidence, negligence of defendant and contributory negligence of plaintiff was established, was rightly submitted to the jury, which found against defendant upon both issues. We might rest the discussion of this assignment solely upon that proposition. We say, however, that, upon the uncontradicted evidence, the affirmative defense of contributory negligence was

not proved. When plaintiff asked the Pullman porter to assist him into the car and the latter took hold of his arms and put him upon the step, being blind, and the porter knowing it, plaintiff was justified in believing that the porter was watching his movements and would see that he did not step off the end of the car, but would pass safely through the open door and into the car to his seat. He might well conclude that the porter, knowing of his physical infirmity, would watch him closely and guide his movements either by a word of warning, or by being in a position where he could touch him and properly guide his movements. Putting it as mildly as the facts justify, we say, also, that the porter, knowing of plaintiff's blindness, was guilty of reprehensible negligence in suffering plaintiff to proceed up the platform steps without even cautioning him, or watching him, or guiding his movements.

The chief ground relied upon for reversal is that the railroad company is not liable for the negligent acts of the employees of the sleeping car company. It is, of course, conceded that, under the doctrine of *Penn. Co. v. Roy,* 102 U. S. 451, when a sleeping car which belongs to·a separate corporation is attached to, and becomes part of, the train of a railroad company, the employees of the sleeping car company are, as to the passengers of the railroad company riding in the sleeping car, to be regarded as employees of the railroad company, for whose negligent acts, which concern the safety or transportation of passengers, the railroad company itself is liable. But it is strenuously argued that the doctrine has not been, and cannot be, legitimately extended to the present case. To our minds the doctrine of the *Roy case* is clearly applicable, and is but the logical extension of a recognized rule of master and servant. The contract between plaintiff and the railroad company, by

which he was entitled to be carried from Ouray to Denver, was but partly performed when the narrow gauge train reached Salida. He certainly was a passenger up to the time he alighted from the train upon its arrival at that station. The journey, however, was incomplete, and a part of the contract was still to be performed. Had plaintiff been taken by defendant's train porter from the narrow gauge train to defendant's railway station or depot, he certainly would have been a passenger while going there, and would have continued to be a passenger all the time he was waiting there for the arrival of the east-bound train which would take him from Salida to Denver, the second stage of the journey. Since it clearly appears that, with the knowledge and tacit approval of the railroad company, the sleeping car company opened its sleeping car for the reception of passengers from the narrow gauge car immediately upon their arrival, which obviated the necessity of waiting in the railway station till the arrival from the west of the connecting train, and the porter of the sleeping car was standing at the platform steps with lantern in hand waiting to assist such passengers to enter the sleeping car, plaintiff was a passenger of defendant in going from the narrow gauge to the sleeping car, and during his movements in passing up the steps and into the car. Being a passenger, it was defendant's duty to take reasonable precautions for his safety and comfort. When defendant's train porter accompanied plaintiff to the sleeping car and turned him over to the Pullman porter, the latter, in assisting passengers into the sleeping car, was acting as the agent and employee of the railroad company in the same sense, and to the same extent, that he would be, had the sleeping car been actually attached to defendant's train after the train had been made up and was moving on the railroad tracks on its way

from Salida to Denver, because such act of assistance concerned the safety and transportation of a passenger. There is the same reason for saying that plaintiff was a passenger of defendant company from the moment of his arrival in Salida until the connecting standard gauge train from Salida to Denver started on its journey, as for saying that he was a passenger continuously between Ouray and Salida, or between Salida and Denver. The defendant was under the same obligation with respect to his safety throughout the entire journey as for any particular portion thereof. In *D. & R. G. R. R. Co. v. Hodgson,* 18 Colo. 117, and *A. T. & S. F. R. Co. v. Shean et al.,* 18 Colo. 368, this court has held that the duty of a common carrier does not cease upon the arrival of its train at the place of a passenger's destination, but there is a continuing duty resting upon the carrier in providing the passenger safe passage from the train to the platform of the depot. The same obligation, of course, rests upon the carrier in providing a safe passage for the passenger in going from the depot to the train to take passage thereon, and in and about the platforms, and, as in this case, in providing for his safety in going from one connecting train to another, which it is necessary for the passenger to do in order to complete his journey. We have no hesitation in extending the doctrine of the *Roy case* to the case made by the evidence in the case in hand. We think the following authorities also in principle sustain our conclusion: 4 Elliott on Railroads (2d ed.), §§ 1579, 1625, 1640; *The H. & S. F. J. R. R. v. Martin,* 11 Ill. App. 386; *B. & O. R. R. Co. v. State, etc.,* 60 Md. 449; *Shannon v. Boston & A. R. Co.,* 78 Me. 52; 2 Atl. Rep. 678; see, also, 7 Rapalje & Mack's Digest of Railway Law 140; *Dwinelle v. N. Y. C. & H. R. R. Co.,* 120 N. Y. 117; 8 L. R. A. 224.                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.