IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION

NASHVILLE, DECEMBER TERM, 1915.

LOUISVILLE & N. R. Co. *v.* MRS. S. H. MARLIN.

(*Nashville.* December Term, 1915.)

1. **CARRIERS. Injuries by servant. Wanton acts.**
   Where an employee of a railway company compelled trespassers stealing a ride to jump from the train when it was passing over a trestle, although they had intended to alight shortly, his act was wanton, and where the trespassers were injured, furnishes ground for an action of damages. (*Post, p.* 439.)

2. **CARRIERS. Carriage of passengers. Sleeping car employees.**
   With respect to passengers, employees in charge of a Pullman car are held agents of the railroad company, and are bound to refrain from injuring passengers as well as to protect them, but such agency does not exist with respect to trespassers. (*Post, pp.* 439-445.)

   Cases cited and approved: Railroad v. Lillie, 112 Tenn., 332; Railroad v. Ray, 101 Tenn., 1; Railroad v. Katzenberger, 84 Tenn., 380; Penn. R. Co. v. Roy, 102 U. S., 451; Dwinelle v. Railroad,

8 Thompson]                435

Railroad v. Marlin.

120 N. Y., 117; Campbell v. Seaboard Air Line R. Co., 83 S. C., 448; Railroad v. Derry, 47 Colo., 584; Gannon v. Railroad, 141 Iowa, 37; Terry v. Burford, 131 Tenn., 451; Union Railway Co. v. Carter, 129 Tenn., 459; Memphis St. Ry. Co. v. Stratton, 131 Tenn., 620; Blake v. Railroad, 38 Tex., Civ. App., 337; Railroad v. Elliott, 41 Tenn., 611; Railroad v. Mitchell, 58 Tenn., 400; Railroad v. Connor, 83 Tenn., 254; Dodge v. Boston & Bangor Steamship Co., 148 Mass., 207; Railroad v. Meacham, 91 Tenn., 428.

3. **MASTER AND SERVANT. Acts of agent. Responsibility for.**

A principal is liable for injuries inflicted on a third person by the acts of his agent within the scope of the agent's authority, though such acts were in violation of instructions. (*Post, pp.* 439-445.)

4. **MASTER AND SERVANT. Acts of agent. Responsibility of principal.**

A master is liable for the acts of his servant within the scope of the servant's authority, to one injured, though such person did not bear any contractual relation to the master. (*Post, pp.* 439-445.)

5. **CARRIERS. Carriage of passengers. Duty of care.**

A carrier of passengers is bound to exercise the highest degree of care for their safety, but its only duty to a trespasser is to refrain from wilfully injuring him. (*Post, pp.* 439-445.)

6. **CARRIERS. Acts of agent. Responsibility of principal.**

The employees of a Pullman car are deemed agents of the railroad company only with their relations to passengers, such employees having no control over the management of the train. Decedent, who had been stealing a ride on the top of a train, climbed down to the platform of a Pullman car shortly before the train reached the station. The Pullman car conductor compelled decedent to jump from the moving train while it was on a high trestle, and from resulting injuries decedent died. There was nothing to show that decedent was about to annoy Pullman passengers or to even enter the car, and the act of the conductor was a purely personal matter of his own. *Held*, that the railroad company was not responsible for the act of the

Railroad v. Marlin.

Pullman car conductor, for such person was not its agent or servant. (*Post, pp.* 439-445.)

---

FROM DAVIDSON

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— M. H. MEEKS, Judge.

KEEBLE & SEAY and F. M. BASS, for plaintiff in error.

W. H. WASHINGTON and LEVINE & LEVINE, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This was an action brought in the circuit of Davidson County by the defendant in error to recover damages for the alleged unlawful killing of her husband, Sam H. Marlin. At the close of the evidence of the plaintiff below, and again at the close of all the evidence, the plaintiff in error moved for a peremptory instruction, but this motion was denied. The case then went to the jury, who rendered a verdict against the plaintiff in error, and from the judgment rendered on that verdict, an appeal was prosecuted to the court of civil appeals, and there the judgment was affirmed. The case then came to this court under the writ of *certiorari*.

The only error assigned is the failure of the trial judge to sustain the motion for a peremptory instructtion, and the refusal of the court of civil appeals to reverse his judgment.

There is no doubt the deceased was a trespasser, and the only evidence as to the manner of his death is the following:

Sam H. Marlin, the deceased, and his brother W. P. Marlin, being in Louisville, Ky., and desiring to come to Nashville, Tenn., where the family of the former resided, and being unwilling or financially unable, to take passage in the usual way, paid a dollar to an employee in the yards at Louisville to "square them through," a sum much less than the fare. Following the advice of the employee referred to, they got upon the tender, and thence upon the top of one of the coaches composing part of a passenger train bound from Louisville to Nashville. They rode on top of the train until it entered Nashville. At this stage of the journey, and at a point not very far from the depot, they climbed down from the roof of the rear coach, a pullman sleeping car, onto its rear platform. Here they encountered the conductor of the sleeping car, who by threatening to strike them with his metal-bound lantern, compelled them to jump off while the train was passing over a high trestle between Cherry and Cedar streets, in Nashville. This occurred about two o'clock in the morning. As the result of the jump, defendant in error's husband sustained injuries which caused his death within a few hours.

The act was wanton and cruel, and, though defendant in error's husband was a trespasser, pure and simple, without a shadow of right on the train, still damages should be allowed if the conductor of the sleeping car was a servant of the railroad company. The whole case therefore turns upon the decision of this question.

The written contract between the Pullman Company and the railroad company, if there was one, is not shown in the evidence. We have nothing but the testimony of two employees of the Pullman Company as to the relations of the two companies. According to this evidence, their relations were, viz.:

The Pullman Company furnished its special facilities, well known to every one, to such of the passengers of the railway company as were willing to pay to the former company the extra charge made therefor. The Pullman conductor collected only the fare due to his company, except that when passengers came in late, and desired to retire, he took up their railway tickets, and turned them over to the railway conductor; this for the comfort of the passengers, to save the necessity of their being aroused by the railway conductor on his subsequent passage through the sleeping car. The Pullman car is manned by only two persons, a conductor and a porter. Both of these are employed and paid by the Pullman Company, receive all of their orders from it, and receive no orders from the railway company. It is the duty of these two servants of the Pullman Company to look after

the comfort of such of the railway company's passengers as enter the sleeping car and pay for its accommodations. It is also their duty to protect any such passenger from insult or from assault, or other injury, offered by any person within the car, whether such aggression be offered by another passenger, or by an intruder who may enter the car. If an intruder enters, it is the duty of the Pullman conductor to ask him to withdraw, and, if he refuse, then to call the matter at once to the attention of the railway conductor, whose duty it is to remove such person. In case an assault should be attempted upon any lawful occupant of the Pullman car, and its violence or suddenness should not permit the delay required to call in the railway conductor or the train crew, it would be the duty of the Pullman servants to act at once and, if necessary to the protection of the party assaulted, to eject the offending person from the car. But the servants of the Pullman Company have no authority to eject any one from the train, not even an intruder upon one of its cars. Such removal can be effected only by the railway conductor, or some member of the train crew.

It may be stated that the conductor of the Pullman car, and also the train conductor, each one, denies that he ejected Sam H. Marlin, or any other person from the train on the night in question, as sworn by W. P. Marlin, the brother of the deceased, and each testifies that he never heard of the alleged occurrence until the present suit was started. However, in dis-

Railroad v. Marlin.

posing of the motion for a peremptory instruction, this phase of the evidence cannot be considered at all, but only the evidence as previously related tending to show liability.

Assuming, as we must when considering the motion for a peremptory instruction that the Pullman conductor forced Marlin to jump from the car, was he acting as the agent of the railway company? We are unable to perceive how such a conclusion could be reached on the facts stated. It is insisted for the defendant in error that the servants of the Pullman Company owed to the railway company the duty of protecting the passengers of the latter who were being transported in the sleeping car, and so far forth were the agents of the railway company; that the presence of an intruder on the rear platform of the Pullman at two o'clock in the morning was a menace to passengers; that in ejecting him from the car, and from the train, the Pullman conductor was protecting the railway company's passengers in the sleeper, and although he exceeded his authority, in the method he adopted to effectuate the protection, still he was acting within the general scope of the authority to protect, and therefore his superior, or master, in the special matter became liable for his act.

It is true that, as between the railway company and its passengers, the porter and the conductor in charge of a sleeping car are held to be the agents of the railway company of whose train the sleeping car forms a part, and responsibility for their acts, as

affecting passengers, is imposed accordingly (*Railroad* v. *Lillie,* 112 Tenn., 332, 342, 343, 78 S. W., 1055; *Railroad* v. *Ray,* 101 Tenn., 1, 10, 1 S. W., 554; *Railroad* v. *Katzenberger,* 16 Lea [84 Tenn.], 380, 1 S. W., 44, 57 Am. Rep., 232; *Penn. R. Co.* v. *Roy,* 102 U. S., 451, 26 L. Ed., 141; *Dwinelle* v. *New York Central & H. R. Co.,* 120 N. Y. 117, 24 N. E., 319, 8 L. R. A., 224, 17 Am. St. Rep., 611; *Campbell* v. *Seaboard Air Line R. Co.,* 83 S. C., 448, 65 S. E., 628, 23 L R. A. [N. S.], 1056, and note, 137 Am. St. Rep., 824; *Denver & R. G. R. Co.* v. *Derry,* 47 Colo., 584, 108 Pac., 172, 27 L. R. A. [N. S.], 761, 764; *Gannon* v. *Chicago, R. I. & P. R. Co.,* 141 Iowa, 37, 117 N. W., 966, 23 L. R. A. [N. S.], 1061), and that is their duty not only to refrain from injuring passengers, but to protect them (same authorities); and it is also true that a servant, acting within the general scope of his authority, makes the master responsible, even though he acts without instructions, or exceed his instructions (*Terry* v. *Burford,* 131 Tenn., 451, 175 S. W., 538, L. R. A., 1915F, 714; *Union Railway Co.* v. *Carter,* 129 Tenn., 459, 166 S. W., 592; Memphis *St. Ry. Co.* v. *Stratton,* 131 Tenn., 620, 176 S. W., 105, L. R. A., 1915E., 704; *Dwinelle* v. *New York Central & H. R. R. Co.,* supra). It is also true, in general, that a party, injured by a servant acting within the scope of his authority, need not, as a condition of liability, stand in any contractual relation to the master, but may be wholly a stranger. *Memphis St. Ry. Co.* v. *Stratton,* supra. But neither the principles

stated nor the authorities cited support the case sought to be made by the defendant in error. There is not a scintilla of evidence that the passengers within the sleeper or anywhere on the train were in the slightest danger, or that the Pullman conductor even purported to act on such ground. The mere fact that the two men climbed down from the top of the car, onto the rear platform, when the train was nearing the depot, could furnish no inference on which to base fear of danger. There was no threat; no offer to enter the car; no request that such entry be permitted. It was perfectly obvious to the Pullman conductor that the two men had been stealing a ride—indeed W. P. Marlin says he told the officer mentioned that they had boarded the train at Louisville—and that they were climbing down from the roof preparatory to leaving the train, when it should reach the depot. In truth, W. P. Marlin says such was their purpose. So, there was nothing in fact, or in appearances even, that could call into action the duty of the Pullman conductor to protect the passengers. Therefore, if the two intruders were driven from the platform of the sleeper, and forced to jump from the moving train, in the manner testified to by W. P. Marlin, the act was one purely wanton and malicious, and performed in his personal capacity by the Pullman conductor, wholly disconnected from any agency, actual or constructive, for the railway company.

The only theory of liability showing any plausibility was that put forward by the defendant in error, which we have just considered, and found wanting in soundness. It was not possible to support the proposition that the law would impute to the employees of the Pullman Company an agency for the railway company as respects trespassers, or the relation of master and servant between them in respect of the conduct of such employees towards trespassers. *Blake* v. *Kansas City Southern Railway Company*, 38 Tex. Civ. App., 337, 85 S. W., 430. The general relation of master and servant does not exist between such persons and a railway company hauling a Pullman car manned by Pullman employees (4 Elliott on Railroads, section 1625), but only as respects passengers. The reasons which justify the imputation of an agency or servanthood in respect of passengers wholly fail when applied to a trespasser. The railway company owes to its passengers the duty of highest care (*N. & C. R. R. Co.* v. *Elliott*, 1 Cold. [41 Tenn.], 611, 78 Am. Dec., 506; *Railroad* v. *Mitchell*, 11 Heisk. [58 Tenn.], 400; *Railroad* v. *Connor*, 15 Lea [83 Tenn.], 254; *Dodge* v. *Boston & Bangor Steamship Co.*, 148 Mass., 207, 19 N. E., 373, 2 L. R. A., 83, and note, 12 Am. St. Rep., 541), while to a trespasser it owes only the duty to refrain from intentionally injuring him (*Railroad* v. *Meacham*, 91 Tenn., 428, 19 S. W., 232). Having assumed a contract of carriage with a passenger, it cannot escape or evade its responsibility to him by turning him

Railroad v. Marlin.

over to the employees of the Pullman Company. The law forbids it, and makes its veto perfect by treating the employees of the sleeping car company as the servants of the railway company, as respects such passengers. As to trespassers there is no contract and no duty of service, and public policy does not require the imputation of an agency.

It results that the trial court and the court of civil appeals were both in error, and their judgments are reversed. The motion for a peremptory instruction should have been sustained, and the suit dismissed. Doing now what should have been done, we sustain the motion, and dismiss the suit at the costs of the defendant in error.