MRS. DONA PHILLIPS *v.* TENNESSEE EASTMAN CORPORATION.

(*Nashville,* December Term, 1929.)

Opinion filed April 5, 1930.

MARGRAVES & MONEYHUN, for plaintiff in error.

540

WORLEY & McAMIS, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

.The sole question in this compensation case is whether the deceased, for whose death compensation is sought, was a servant, or an independent contractor. The trial court dismissed the petition, finding, as set forth in his judgment, ''that the deceased, Caney Phillips, was not an employee of the defendant, Tennessee Eastman Corporation, but was an independent contractor cutting wood for the Tennessee Eastman Corporation, under a written contract; that said contract did not create the relation of master and servant or employer and employee between deceased on one hand, and the Tennessee Eastman Corporation on the other; that the death of the said Caney Phillips does not come under and is not compensable under the Workmen's Compensation Law of Tennessee, and that the petition in this case should be dismissed at the cost of the petitioner.''

It appears that Caney Phillips was accidentally killed by the falling of a tree on which he was working with a companion, employed by him, while engaged in performance of a contract in writing with Eastman Corporation, by the terms of which he undertook to cut and pile a given number of cords of chemical wood, within a stipulated distance from the railroad, for a consideration of $1.75 a cord. Specifications covering sizes, lengths, nature and quality of the wood, and the manner of piling, are set forth in the written contract in detail. It was provided that the work was to be started not later than the 5th day of March and completed not later than the

5th day of April, and that the contractor was "to keep employed an average of not less than two men until the work is completed." The cutting was to be done from a tract to be assigned on the A. N. Nance lands, near Clinchfield, in Granger County, the Corporation being located in Sullivan County. The contract, on a printed form, was entered into by and between the Eastman Corporation, of the first part, and Caney Phillips and J. H. Cook, of the second part, and was dated the 5th day of March, 1927.

Proof was offered of other like contracts with different parties and that the custom was for representatives of the Corporation to go on the ground from time to time to lay off or assign the tracts and boundaries and to inspect and reject or receive the wood cut, according to the detailed written specifications.

It is insisted for petitioner that there is no evidence to support the finding of the trial Judge; that the contract does not create the relationship of independent contractor, but of employee only; and that this construction is sustained by the custom prevailing under this class of contracts to direct and supervise execution thereof.

Considering first the writing, the substance of petitioner's insistence seems to be that (1) it reserves the right of control and direction of the work, and, (2) it reserves the right of termination or cancellation to a degree inconsistent with the status of independent contractor.

While the contract sets forth in specific detail directions as to the kinds and sizes and quality of the trees to be cut and how and where the wood cut shall be piled, we are unable to see that these provisions deal other than with the results. Specifications equally minute are to be

542

found in many independent contracts for building and the materials entering therein.

■ In *Gulf Refining Co.* v. *Huffman*, 155 Tenn., at page 587, this Court quoted with approval from Thompson on Neg., 999, this statement of the rule, adopted by Mr. Justice LUTON in *Powell* v. *Const. Co.*, 88 Tenn., 697. "In every case the decisive question is, had the defendant the right to control in the given particular the conduct of the person doing the wrong."

■ Applying this here, nothing is to be found in this contract reserving to the Eastman Corporation the right to control the conduct of Phillips with respect to the manner in which he and his helper employed by him should exercise his force or skill in felling this tree, or what precaution he should take for his or his helpers safety. No details of performance as related thereto were undertaken to be controlled or supervised by the corporation. It seems, from the meager account given, that at a certain stage of the cutting the heavy stump tore loose and, overtaking the deceased as he ran from under, crushed him. It may be inferred that if he had taken a position on the upper side of the falling tree, the unfortunate accident could have been avoided. This was a detail, a "particular," over which the Eastman Corporation neither reserved nor undertook to exercise control. It was interested only in the results of the cutting, and the limitation of the operations to that timber which it had acquired the right and had the desire to cut.

■ It is true, as said in *Sledge* v. *Hunt*, 157 Tenn., 606, that, "There is a presumption that one performing work for another is an employee," but this is a presumption only, rebutted here by the provisions of the written contract.

█ Nor is the character of the relationship determined by the method of payment. "The authorities generally hold that the mere fact that the laborer is receiving so much by the piece or job does not control the question as to whether the contractee was an independent contractor or a servant." *Finley* v. *Keisling,* 151 Tenn., 473; *Frost* v. *Blue Ridge Co.,* 158 Tenn., 18. Cases arising under these conditions have been decided both ways. It is perhaps peculiarly true of the class of cases to which this belongs, where the question of independent contract is involved, that each case must be decided on its particular facts.

█ Diligent counsel for petitioner rely strongly on the insistence that the contract contemplates detailed supervision and direction, but frankly concede, at one point, a purpose manifest in the contract "to avoid as far as possible any supervision or direction of the details of the work as to the mode and manner of cutting this timber." We are of opinion that upon a reasonable construction of the contract as a whole, it appears that this distinction is observed, and this is an essential distinction. In *Odom* v. *Sandford,* 156 Tenn., at pages 211 to 213, Mr. Justice McKinney deals clearly with this question. What is there said is particularly applicable to the insistences made here. The distinction between the reservation of the right to control as to results, and the right to control as to "the means and methods by which the timber shall be cut and hauled" is emphasized. And see *Mayberry* v. *Bon Air Co.,* Hickman Equity, decided today, 160 Tenn., 459.

In the instant case, the work was to be done in another County, at a distance from the plant of the Corporation, under conditions wholly different from those presented where work is done by the lot or piece on the immediate premises of the employer and under the constant super-

vision of its foreman. The element of caution and safety bears directly on the danger of injury by accident. A limiting principle which underlies the theory of compulsory, or contractual, compensation is affected by the reserved or exercised power of the employer to regulate the performance of the work particularly in those respects which bear upon his right or duty to afford a safe place to work, proper tools, reasonable hours, general competency of the employee to discharge specific duties, including age, experience, physical capacity, and sex. A one armed, or blind man might safely do one job, and not another. On these and other grounds the responsibility of the employer fixed by the compensation statutes is limited to conditions under which he may exercise in some reasonable degree control of the manner and mode of performance.

In the instant case no right of this nature was reserved. The felling and splitting of heavy timbers in the forest calls for strength, experience and skill. Without these it is a dangerous occupation. Experience teaches how each tree, in its individual setting, can be best and most safely dealt with. The positions to be assumed by the workers, how and to what extent the axe shall be wielded, whether metal or wooden mauls and wedges shall be used. Applying the rule above quoted,—"in every case the decisive question is, had the defendant the right to control in the given particular the conduct of the person,"—it seems quite clear that the Eastman Corporation neither reserved nor exercised the right to control in these given particulars which bear directly on the accident the operations of the deceased. He worked when he chose, employed whom he selected, and did the work in the manner his judgment or desires prompted.

■ It is urged that provisions of the contract for its termination are inconsistent with the independent contractor construction. It is true that our cases recognize that such reservations may go to such an extent, or be in such form, as to be inconsistent with the independent contractual relationship, but this is held only to be "a strong circumstance tending to show the subserviency of the employee." It is "a single fact," only, bearing on the issue. *Odom* v. *Sandford, supra.*

It is not held to be absolutely determinative, in the face of other express provisions and conditions. In the instant case, the reservations relied on are not absolute and unconditional. In one clause relied on provision is made for either party to terminate the contract on giving thirty days notice to the other, and paying $5. Aside from the apparent mutuality, since this contract was to be completed within thirty days from its making, this provision could have no materiality. The other provision for termination is on fifteen days notice, and while reserved alone to·the corporation, is coupled with conditions for the protection of the contractor which appear reasonable. He is assured thereby certain preferential recognition in continuance of work on the tract of land. Furthermore, the right of termination is to be exercised only in the event of certain contingences.

We have considered the oral proof of the custom and practices under other like contracts, but find nothing therein materially affecting the construction adopted. Moreover, where the contract is in writing and its terms unambiguous, the question is one of law. *Mayberry* v. *Bon Air Co., supra.*

On the whole case we are satisfied with the conclusions of the trial court and the judgment is affirmed.