AMERICAN LEAD PENCIL CO. *v.* MUSGRAVE PENCIL CO., INC.,
*et al.*

(*Nashville,* December Term, 1935.)

Opinion filed March 7, 1936.

Cornelius, McKinney & Gilbert, of Nashville, for appellants.

Cooper & Cooper, of Shelbyville, and Seay, Stockell & Edwards, of Nashville, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

From a decree overruling their demurrers in part, the chancellor permitted an appeal by defendants to this court.

The complainant avers that it is a New York corporation engaged in the business of manufacturing and selling pencils. That it was the owner of a patent covering an eraser attachment for lead pencils known as the "Oversize" or "Reckford" tip. That on April 11, 1933, complainant entered into a license agreement with defendant J. R. Musgrave permitting said Musgrave to manufacture at his factory in Shelbyville, Tenn., for a term of three years, lead pencils embodying said patented device and to sell the same. A copy of the agreement was filed with the bill reciting a certain cash consideration and a certain license fee based on the quantity of pencils embodying said device manufactured and sold by Musgrave. The agreement also provided that Musgrave should not sell pencils embodying this device at prices lower than authorized by complainant, and complainant undertook to furnish Musgrave from time to time with a scale of prices at which such pencils should be sold.

Under the terms of the agreement the license granted to Musgrave was personal and nonassignable. The bill charges that without the consent or knowledge of complainant, about the first of the year, 1934, Musgrave Pencil Company, Inc., bought all the assets of defendant J. R. Musgrave used in the manufacture of lead pencils, and that defendant J. R. Musgrave, in violation of the express terms and provisions of his contract with

complainant, undertook to assign all his rights under said contract to manufacture and sell pencils embodying complainant's patent to Musgrave Pencil Company, Inc. That following said attempted assignment defendant Musgrave Pencil Company, Inc., began manufacturing and selling pencils carrying complainant's patented device and continued such manufacture and sale up to and probably after December 19, 1934.

The complainant charged various breaches of the terms of its contract with defendant Musgrave and set out a notice of termination of said contract given said Musgrave on or about December 19, 1934, which right to terminate the complainant claimed by reason of particular provisions of the license agreement. There were other allegations in the bill which it is not necessary to detail at this time, and the bill prayed:

That the license agreement between complainant and defendant J. R. Musgrave be declared terminated; that said defendant be required to answer and set out a full and detailed statement of all pencils manufactured and sold by him embodying complainant's patent up to the date that he undertook to assign his license to defendant Musgrave Pencil Company, Inc.; that defendant Musgrave Pencil Company, Inc., be required to set out in its answer a like statement of all pencils manufactured and sold by it embodying the aforesaid device; "that your complainant may be awarded said sum of $25,000 as damages for said breach and violation of the license agreement;" that an injunction issue enjoining defendants from the further manufacture and sale of any pencils bearing the Oversize or Reckford tip; and that complainant be granted general relief.

The defendants filed separate demurrers, each demurrer, however, resting largely on the same grounds. The demurrers contained three propositions.

First. That the bill undertakes to join a suit on a contract against J. R. Musgrave with a suit for infringement of a patent against Musgrave Pencil Company, Inc., and that the bill should accordingly be dismissed as multifarious and for a misjoinder of parties.

Second. That Musgrave Pencil Company, Inc., not being a party to the license agreement, and the attempted assignment to it of any rights under such agreement being without effect, the suit against said Musgrave Pencil Company, Inc., must necessarily be regarded as one not based on contract but purely for infringement of a patent, and that jurisdiction of such suit is in the federal courts alone under title 28, section 371, subsection 5, U. S. C. (28 U. S. C. A., section 371(5)).

Third. That the bill and the license agreement exhibited therewith showed an attempted contract not enforceable because in restraint of trade and competition contrary to the laws of Tennessee and of the United States.

The chancellor sustained the demurrers in so far as the bill sought to recover damages against defendant Musgrave Pencil Company, Inc., and in so far as it sought to procure an injunction against that defendant restraining it from the further manufacture and sale of pencils bearing the Oversize or Reckford tip; being of opinion that in such aspects the bill presented a case beyond the jurisdiction of the chancery court. The chancellor, however, did not dismiss the bill as to the Musgrave Pencil Company, Inc.

■ The defendants insist that the bill should have been dismissed in its entirety as multifarious and for misjoinder of parties. We agree that the bill should have been dismissed entirely as to defendant Musgrave Pencil Company, Inc. We see no reason for retaining this defendant as a party to this cause.

The complainant does not except to the chancellor's decree dismissing the bill in so far as it sought a recovery of damages against Musgrave Pencil Company, Inc., or an injunction against that defendant. It is not necessary to retain Musgrave Pencil Company, Inc., before the court to have a decree adjudging unlawful the attempted assignment to it by Musgrave of rights under the license agreement. The bill averred that such assignment was illegal and without effect. This was conceded by the demurrer. The demurrer is predicated on the proposition that the attempted assignment was void. If the assignment were valid, there could be no contention that there was a misjoinder of parties or that the bill was multifarious, nor indeed would there be any lack of jurisdiction in the chancery court. If the assignment were good, the suit would be one on a contract against an original party to that contract and an assignee of the contract.

■■ The law seems to be well settled that a licensee cannot transfer the right to the use of a patent without the consent of the patentee. *Simpson* v. *Wilson,* 4 How., 709, 11 L. Ed., 1169; *Troy Iron, etc., Factory* v. *Corning,* 14 How., 193, 14 L. Ed., 383; *Lane, etc., Co.* v. *Locke,* 150 U. S., 193, 14 S. Ct., 78, 37 L. Ed., 1049. Such being the law and such being the concession of the parties hereto, implicit in their pleadings, we may proceed to adjudge that the attempted assignment by defendant Musgrave

to defendant Musgrave Pencil Company, Inc., made according to the allegations of the bill without permission of complainant, was unlawful and carried no rights under the aforesaid license agreement.

■ The defendant Musgrave Pencil Company, Inc., is not to be retained as a party to the suit on the idea that a discovery may be obtained from it. A bill for discovery does not lie against a corporation because a corporation answers under seal and not under oath. *Smith* v. *St. Louis Mut. Life Ins. Co.*, 2 Tenn. Ch., 599; *Home Indemnity Co.* v. *Bogue*, 168 Tenn., 493, 79 S. W. (2d), 580.

■ While we are of opinion, therefore, that this bill should be dismissed entirely as to defendant Musgrave Pencil Company, Inc., we do not think it should be dismissed against defendant J. R. Musgrave.

■ Section 10407 of the Code is as follows:

"If a demurrer for multifariousness is sustained, the court may authorize amendments, by directing separate bills to be filed without new process as to the parties before the court, and by the addition of new parties, or otherwise, as may be deemed necessary for the attainment of justice."

Under the broad authority of this statute, we think the court is free to make an order, when a bill is challenged as multifarious, overruling so much of the bill as may be necessary to reduce its issues to unity. Likewise to make an order dismissing the bill as to matters presented beyond the jurisdiction of the court, but retaining the bill as to matters within the jurisdiction of the court not dismissing the bill entirely. The statute quoted above was taken as express authority for the

latter proposition by this court in *Harrison* v. *Hallum*, 45 Tenn. (5 Cold.), 525. In that case the court lacked jurisdiction to grant the relief sought against certain of the defendants. It dismissed the bill as to those defendants, but retained the bill as to the other parties and "meritorious equities."

This brings us to the defendants' contention that the contract embodied in the license agreement is void and unenforceable as one in restraint of trade and competition contrary to section 5880 of the Code of Tennessee and contrary to the Federal Anti-trust Statutes, title 15, sections 1 and 2, U. S. C. (15 U. S. C. A., secs. 1, 2).

We take it that a monopoly, in so far as it is lawful and authorized under the patent laws of the United States, cannot be penalized by the statutes of Tennessee.

It is not necessary to set out the license agreement entered into between the complainant and defendant Musgrave. It is sufficient to say that the contract involves no sale and resale of patented articles, and the authorities relied on by defendant dealing with unlawful restrictions with respect to the resale of patented articles are not in point.

The contract before us is a license by complainant to defendant Musgrave to manufacture and sell pencils carrying the patented device. Musgrave was entitled under this license to make the Oversize or Reckford tips himself or he could buy such tips from others authorized to make and sell them. The complainant did not undertake itself to sell the tips to Musgrave. The contract contained no restriction as to the variety of pencils on which Musgrave might place these tips. He was entitled to make his own pencils or to buy the pencils from any

one else and attach the tips thereto. Neither did the contract contain any limitations with respect to Musgrave's sale of pencils not bearing the Oversize or Reckford tip. These things take the case before us out of the authority of other decisions relied on by defendants that struck down agreements with respect to patented articles.

In the case before us the complainant owning the patent, covering the Oversize or Reckford device controls the manufacture and sale of pencils embodying that device. Its license to defendant Musgrave to manufacture and sell pencils embodying the patented device imposed a condition that Musgrave's sales of such pencils should be at prices fixed by the complainant and subject to change upon notice from complainant.

Such being the facts, the case falls directly within the authority of *United States* v. *General Electric Co.,* 272 U. S., 476, 47 S. Ct., 192, 196, 71 L. Ed., 362. In that case the General Electric Company, as the owner of the patents, entirely controlling the manufacture, use, and sale of the tungsten incandescent lamps, licensed the Westinghouse Company to make, use, and sell lamps under such patents. The licensor imposed the condition that sales by the Westinghouse Company should be at prices fixed by the licensor and subject to change according to its discretion.

The agreement between the General Electric Company and the Westinghouse Company was assailed by the government as being contrary to the anti-trust statutes of the United States, but the government's contention was overruled and the Supreme Court said:

"It is well settled, as already said, that where a patentee makes the patented article, and sells it, he can

exercise no future control over what the purchaser may wish to do with the article after his purchase. It has passed beyond the scope of the patentee's rights. *Adams* v. *Burks,* 17 Wall., 453, 21 L. Ed., 700; *Bloomer* v. *Mc-Quewan,* 14 How., 539, 14 L. Ed., 532; *Mitchell* v. *Hawley,* 16 Wall., 544, 21 L. Ed., 322; *Hobbie* v. *Jennison,* 149 U. S., 355, 13 S. Ct., 879, 37 L. Ed., 766; *Keeler* v. *Standard Folding Bed Co.,* 157 U. S., 659, 15 S. Ct., 738, 39 L. Ed., 848. But the question is a different one which arises when we consider what a patentee who grants a license to one to make and vend the patented article may do in limiting the licensee in the exercise of the right to sell. The patentee may make and grant a license to another to make and use the patented articles but withhold his right to sell them. The licensee in such a case acquires an interest in the articles made. He owns the material of them and may use them. But if he sells them he infringes the right of the patentee, and may be held for damages and enjoined. If the patentee goes further and licenses the selling of the articles, may he limit the selling by limiting the method of sale and the price? We think he may do so provided the conditions of sale are normally and reasonably adapted to secure pecuniary reward for the patentee's monopoly. One of the valuable elements of the exclusive right of a patentee is to acquire profit by the price at which the article is sold. The higher the price, the greater the profit, unless it is prohibitory. When the patentee licenses another to make and vend and retains the right to continue to make and vend on his own account, the price at which his licensee will sell will necessarily affect the price at which he can sell his own patented goods. It would seem entirely

reasonable that he should say to the licensee, 'Yes, you may make and sell articles under my patent but not so as to destroy the profit that I wish to obtain by making them and selling them myself.' He does not thereby sell outright to the licensee the articles the latter may make and sell or vest absolute ownership in them. He restricts the property and interest the licensee has in the goods he makes and proposes to sell.'' *United States* v. *General Electric Co., supra.*

The court in this case approved and repeated one of its earlier statements as follows:

''The very object of these laws [patent laws] is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee for the right to manufacture or use or sell the article, will be upheld by the courts. The fact that the conditions in the contracts keep up the monopoly or fix prices does not render them illegal.'' *E. Bement & Sons* v. *National Harrow Co.,* 186 U. S., 70, 22 S. Ct., 747, 755, 46 L. Ed., 1058.

We think the two decisions of the Supreme Court of the United States, from which we have just quoted, are decisive here. In *United States* v. *General Electric Company, supra,* the latter owned certain patents covering the use of tungsten filaments and a patent for the use of gas in an electric light bulb. Its agreement with its licensee reserved to it control of the price at which electric light bulbs embodying these patents should be sold. In *E. Bement & Sons* v. *National Harrow Co.,* the latter owned certain patents covering appliances used in the manufacture of harrows, and in its contract with its

licensee it reserved control of prices at which harrows embodying such patented appliances should be sold. In the case before us the American Pencil Company owns a patent covering an eraser attached to lead pencils, and it is undertaking to reserve control of the prices at which its licensee shall sell lead pencils carrying this patented device.

The three cases are not to be distinguished. The Supreme Court in *United States* v. *General Electric Company* has considered and differentiated all of its own decisions which the defendants herein press upon our attention in this connection.

The decree of the chancellor will be modified as herein indicated, and this cause remanded for further proceedings against defendant J. R. Musgrave. The bill is dismissed as to defendant Musgrave Pencil Company, Inc. The costs of appeal will be divided between American Pencil Company and J. R. Musgrave. The costs below will be fixed by the chancellor.

It may be added that we do not construe the prayer of the bill as do the defendants. We do not understand the bill to limit its prayer for the recovery of damages against J. R. Musgrave to damages only that accrued prior to the attempted assignment of the license to Musgrave Pencil Company, Inc.