JAMES A. MOORE, Plaintiff-in-Error, v. UNION
CHEVROLET CO. and WILLIAM FARMER,
Defendants-in-Error.—326 S. W. (2d) 855.

Western Section.    December 31, 1958.

Certiorari Denied by Supreme Court July 27, 1959.

John C. Moore and William C. Irons, Memphis, for plaintiff in error.

Thomas R. Prewitt, Memphis, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel, for Union Chevrolet Co.

J. Martin Regan, Memphis, Canada, Russell & Turner, Memphis, of counsel, for William Farmer.

CARNEY, J. Plaintiff below, James A. Moore, has appealed in error from the action of the Circuit Judge in directing a verdict in favor of the defendants, Union Chevrolet Company and William Farmer. Plaintiff Moore brought suit for personal injuries and property damage to

his automobile which were sustained in a collision on April 9, 1957, in Memphis, Tennessee.

The plaintiff, James A. Moore, who is a practicing physician, was travelling northward in his 1954 Oldsmobile on Bellevue Street in Memphis, Tennessee. As he was in the process of making a left turn westward onto Eastmoreland Avenue a 1953 Ford automobile containing two persons unknown very suddenly and without warning backed out from the curb at the southwest corner of the intersection of Bellevue and Eastmoreland northeastwardly into the intersection completely blocking the passageway of plaintiff Moore into Eastmoreland Avenue.

The plaintiff, Moore, applied the power brakes on his automobile, came to an emergency stop, and barely missed striking the left side of the 1953 Ford automobile. Almost immediately thereafter plaintiff Moore's automobile was struck from the rear by a vehicle driven by Doris Kesler.

Both plaintiff Moore and Mrs. Kesler were injured in the collision and the driver of the 1953 Ford hurriedly left the scene of the accident and his identity has never been learned. However, witnesses did get the number of the automobile which was driveout tag 50432.

Two days later the 1953 Ford automobile was found parked behind the used car lot of Union Chevrolet Company by Officer Clyde Watts, with the Hit-Run Division of the Memphis Police Department. Mr. Farmer is a new car salesman for Union Chevrolet Company.

Upon interrogation by Officer Watts, Mr. Farmer stated that the car belonged to his wife and that he had put it on the used car lot for sale. Mr. Farmer stated to the officer that he did not know who was driving the car on

the day of the accident with plaintiff Moore; that there had been several people trying the car out; it was available for the used car salesmen to demonstrate to prospective purchasers.

According to the record this particular drive-out tag was purchased among others by Union Chevrolet Company from the Department of Finance & Taxation of the State of Tennessee. Under the rules and regulations of the Department of Finance & Taxation the drive-out tags were to be issued by the automobile dealer to the purchasers of automobiles and used by the customers in lieu of the regular license plate only for two days and only until he could get a regular license plate issued to him for his automobile.

The defendant, William Farmer, admitted to the police officer that he had withdrawn the drive-out tag from the offices of the Union Chevrolet Company and placed it on the 1953 automobile without knowledge or permission of Union Chevrolet Company.

Plaintiff Moore brought suit against Union Chevrolet Company, William Farmer, Doris Kesler and her husband, Stanley Kesler. At the conclusion of the plaintiff's proof the Trial Judge sustained a motion for a directed verdict on behalf of Union Chevrolet Company and William Farmer and thereupon the plaintiff Moore took a nonsuit as to the defendants, Doris Kesler and husband, Stanley Kesler.

The only question before this Court upon this appeal is whether or not His Honor the Trial Judge was in error in taking the case away from the jury and directing the verdicts for the defendants, Farmer and Union Chevrolet Company, as above set out.

Upon the trial Plaintiff Moore called as witnesses in his behalf the defendant, Farmer, and E. L. Keller, manager of the used car department of the defendant, Union Chevrolet Company.

Mr. Keller testified that he had never seen the 1953 Ford until the day the police officer made his investigation; that the Union Chevrolet Company had no interest in the automobile; that he did not know whose automobile it was until an employee told him it belonged to Mr. Farmer.

Further, Mr. Keller testified that the drive-out tags were kept in a drawer in his desk and that the salesmen had authority to withdraw a drive-out tag from his desk without his knowledge but that such tags so withdrawn were to be entered in a book kept for that purpose showing the date and name of the customer to whom the drive-out tag was being issued. This particular drive-out tag No. 50432 placed on the 1953 Ford was not entered on the books kept for that purpose and Mr. Keller had no record or knowledge of it having been withdrawn by Mr. Farmer.

Mr. Farmer testified that he traded for the 1953 Ford automobile sometime around the first of April, 1957, and placed it on the Union Chevrolet Company used car lot for resale. Further, he testified that he spread the word around among the other salesmen that the car was for sale and his asking price of $795.

It seems to have been the custom at Union Chevrolet Company for the new car salesmen, of which Mr. Farmer was one, to permit the used car salesmen to sell automobiles which they had acquired personally. There were from twelve to fifteen used car salesmen employed at Union Chevrolet Company.

Mr. Farmer gave this explanation of having first said that the car belonged to his wife: He sold his wife's automobile and took the 1953 Ford in on the trade; later he sold the 1953 Ford and used the proceeds thereof along with the cash received in the first trade to purchase his wife a 1957 automobile. However, upon his examination in open court he at all times admitted that the 1953 Ford belonged to him.

Mr. Farmer testified that on April 9, 1957, he had not driven the 1953 Ford and had no knowledge of who had driven the car on that date and that he had no way of knowing who was driving the car at the time of the accident.

Further, Mr. Farmer could not give the name of any particular salesman whom he told the car was for sale and the asking price but he said that they all knew about it.

Further, Mr. Farmer testified that he felt reasonably sure that he saw the car practically every day on the used car lot from the time he first placed it there until after the accident and so far as he knew it was never taken and shown by any of the salesmen to a prospective purchaser during the three weeks period it remained unsold.

The Trial Judge was of the opinion that if Mr. Farmer's car at the time of the accident was being driven by one of the fellow salesmen then such fellow salesman would have been an independent contractor and therefore, neither Farmer nor Union Chevrolet Company would be liable.

Plaintiff-in-error Moore contends on this appeal that he was entitled to go to the jury on the basis of the pre-

sumption of ownership contained in T. C. A. sec. 59-1037 and also on the theory of agency proven by circumstantial evidence.

■ We consider first the assignments of error with reference to Union Chevrolet Company and we hold that the Trial Judge was correct in directing a verdict as to the defendant, Union Chevrolet Company. The proof affirmatively shows that Union Chevrolet Company had no interest in the sale or demonstration of this 1953 Ford and there is no proof that the automobile was being operated on the business of or under the control of the Union Chevrolet Company at the time of the collision. Hence, the action of the Trial Judge as to Union Chevrolet Company is affirmed.

However, a more serious question appears with reference to the defendant, William Farmer. T. C. A. sec. 59-1037 as amended by the Acts of 1957 provides as follows:

"59-1037. Prima facie evidence of ownership of automobile and use in owner's business.—In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of such vehicle, shall be prima facie evidence that said vehicle at the time of the cause of action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose, and such proof of ownership likewise shall be prima facie evidence that said vehicle was then and there being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the course and

scope of his employment. This section is in the nature of remedial legislation, and it is the legislative intent that it be given a liberal construction. (Acts 1921, ch. 162, sec. 1; Shan. Supp., sec. 3079a-198b1; mod. Code 1932, sec. 2701; Acts 1957, ch. 123, secs. 1, 2.)''

▪■ The effect of this amendment of 1957 was to create the same presumption of agency arising out of the proof of operation and/or agency as already provided by T. C. A. sec. 59-1038 under proof of registration.

Before the enactment of the amendment bare proof of ownership did not raise any presumption that the vehicle at the time of the accident was being operated by the owner or by his employee. East Tennessee & Western North Carolina Motor Transport Co. v. Brooks, 1938, 173 Tenn. 542, 121 S. W. (2d) 559; Midwest Dairy Products Co. v. Esso Standard Oil Co., 1952, 193 Tenn. 553, 246 S. W. (2d) 974.

Apparently T. C. A. sec. 59-1038 is not applicable because the title to the 1953 Ford at the time of the accident was not registered in the name of the defendant, Farmer, or the Union Chevrolet Company but the registered title remained in the person from whom the automobile was purchased and then when Mr. Farmer sold the automobile the registered title was transferred from the former owner to the new purchaser from Mr. Farmer.

However, T. C. A. sec. 59-1037 as amended is applicable and the same presumption of operation and/or agency obtains under this section. Also we are of opinion that many of the cases decided by our Supreme Court in construing T. C. A. sec. 59-1038 are now applicable to sec. 59-1037 after the amendment of 1957.

■ Stated generally these cases hold that the statutory presumption casts upon the defendant the burden of going forward with the proof and upon the introduction of credible evidence upon the subject the statutory presumption disappears. However, if there is any substantial evidence upon which the jury can discredit the witness by his own statements or by other contradictory proof and there is no other uncontradicted credible evidence upon the subject, the statutory presumption remains in the case. McMahan v. Tucker, 1948, 31 Tenn. App. 429, 442, 216 S. W. (2d) 356; Smith v. Phillips, 1957, 43 Tenn. App. 364, 309 S. W. (2d) 382.

■ In our opinion there was sufficient evidence which would justify the jury in disbelieving the testimony of Mr. Farmer that he was not driving the car on the day of the collision and that no one was driving the same with his knowledge or permission or on his business.

First, Mr. Farmer told the investigating officer that the car belonged to his wife whereas on the trial he admitted that the car belonged to him.

Second, he admitted taking the drive-out tag from the desk of the manager of the Union Chevrolet Company without any entry thereof in the book kept for that purpose and used said drive-out tag in violation of the rules and regulations of the State Department of Finance & Taxation.

Third, even though Mr. Farmer testified that he had authorized any one of the twelve to fifteen used car salesmen of the Union Chevrolet Company to demonstrate and sell the automobile for him he was unable to name a single one to whom he remembered giving this information in person.

Fourth, even though Mr. Farmer testified that he was accustomed to seeing the automobile every day on the used car lot and he had no recollection of any of the salesmen ever giving a demonstration of the car to any prospective purchaser yet the proof shows that when he was informed by the investigating officer that the car had been involved in a collision he volunteered no information as to when last he saw the car and upon the trial his testimony is very vague as to when he last saw the automobile before he was informed that it had been involved in a wreck and driven by a hit and run driver.

Fifth, he offered practically no testimony that he had made any substantial effort to ascertain from any of the fellow salesmen or any of the employees of Union Chevrolet Company whether any one of them had driven the car or could furnish any information as to who might have used the automobile on the occasion of the collision with the plaintiff's car; Mr. Farmer contents himself simply by saying, ''I was not driving the car at the time of the collision and I do not know who was driving it.''

We think all these circumstances raised a question as to Mr. Farmer's veracity and credibility and His Honor the Trial Judge should have submitted the issue of Mr. Farmer's liability to the jury.

Also we feel constrained to hold that His Honor the Trial Judge erred in holding that if the automobile was being driven by a fellow salesman at the time of the accident, such fellow salesman was an independent contractor and the defendant Farmer would not be liable for his negligent acts.

It will be remembered that the 1953 Ford automobile was placed on the used car lot of Union Chevrolet Com-

pany for purposes of sale. The defendant Farmer testified that he spread the word around among the used car salesmen that the car was for sale at a price of $795 and that he, Farmer, would pay the usual commission for the sale. Impliedly or expressly Farmer authorized any one of the salesmen to drive the automobile from the lot for demonstration purposes.

Mr. Farmer testified that he never missed the automobile from the premises or area of Union Chevrolet Company and therefore, the inference is that the driver of the 1953 Ford automobile involved in the collision returned the car to the premises of the Union Chevrolet Company shortly after the accident. The return of the automobile to its accustomed place negatives the idea that the automobile was being used at the time of the collision by a thief or someone without authority to operate it.

From these facts we think the jury could well find that the automobile at the time of the collision was being driven by one of the used car salesmen at Union Chevrolet Company in demonstrating the car to a prospective purchaser or else was being driven by the prospective purchaser in the presence of or accompanied by the used car salesman.

From 5A Am. Jur.—Automobiles and Highway Traffic —page 580, sec. 568, we quote as follows:

"There are two basic rules regarding the liability of an automobile dealer for the negligent operation by a prospective purchaser, or one acting for him, of a car owned by the dealer. The first is that the dealer is not liable if the negligent operation occurs while the prospective purchaser is driving the car unaccompanied by the dealer or any representative of the

dealer. Nor does liability attach to the dealer for the negligent operation of the dealer's car by one acting for a prospective purchaser. In such cases it is generally said that the relationship of master and servant or principal and agent does not exist between the dealer and the driver. The relationship is rather one of bailment calling for application of the rule that a bailor is not liable for the negligence of his bailee. However, the line between the cases in which the driver is the agent of one and those in which he is the agent of the other is often very shadowy.

"The second basic rule is that the dealer will be held liable for the driver-buyer's negligence in driving the dealer's car where the dealer or his representative is present in the car. A further principle to be noted is that where a prospective purchaser, or one acting for him, operates a dealer's car in accordance with permission granted by a representative (such as a salesman) of the dealer, there can in no case be liability on the dealer's part for injuries resulting from the purchaser's negligent driving if, in granting the permission, the representative has acted beyond the scope of his authority."

Our Tennessee Supreme Court in the case of Hill v. Harrill, 1958, 203 Tenn. 123, 310 S. W. (2d) 169, followed the first basic rule quoted above.

Tennessee cases analogous to the situation covered by the second basic rule quoted above are: Tennessee Coach Co. v. Reece, 178 Tenn. 126, 156 S. W. (2d) 404; Potter v. Golden Rule Gro. Co., 169 Tenn. 240, 84 S. W. (2d) 364, 366; Greer v. McKee, 13 Tenn. App. 625; Elkin Motor Co. v. Ragland, 6 Tenn. App. 166.

His Honor the Trial Judge was of opinion that any one of the salesmen who might have been driving or riding in the Farmer automobile at the time of the accident was an independent contractor and therefore Farmer could not be legally liable for the negligence of the driver of the automobile.

Our appellate courts have discussed this question in many cases.

From Grace v. Louisville & N. R. Co., 19 Tenn. App. 382, 89 S. W. (2d) 354, 357, we quote as follows:

"It is familiar law that an 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work. The ultimate question is not whether the employer actually exercises control but whether he has the right to control of essential details. Gulf Refining Co. of Louisiana v. Huffman & Weakley, 155 Tenn. 580, 297 S. W. 199; Powell v. (Virginia) Construction Co., 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Mayberry v. Bon Air Chemical Co., 160 Tenn. 459, 26 S. W. (2d) 148; Morgan Lumber Co. v. James, 14 Tenn. App. 305. Merely denominating one an 'independent contractor' does not make him so. Chunn v. Memphis Flooring Co., 7 Tenn. Civ. App. 532. In every case the decisive question is: Had the defendant the right to control in the given particular the conduct of the person doing the wrong? Phillips v. Tenn. Eastman Corp., 160 Tenn. 538, 26 S. W. (2d) 1051; Powell v. (Virginia) Construction Co., supra.

220

220

"In Standard Oil Co. v. Parkinson, 8 Cir., 152 F. 681, 682, the rule was more elaborately stated as follows:

" 'The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect. There can be no recovery of a person for the act or omission of his alleged servant under the maxim, "respondeat superior," in the absence of the right and power in the former to command or direct the latter in the performance of the act or omission charged, because in such a case there is no superior to respond. Brady v. Chicago & Great Western R. Co., 8 Cir., 114 F. 100, 107, 57 L. R. A. 712; Atwood v. Chicago, R. I. & P. R. Co., C. C., 72 F. 447, 454, 455; Byrne v. Kansas City, Ft. S. & M. R. Co., 6 Cir., 61 F. 605, 608, 24 L. R. A. 693; Hilsdorf v. City of St. Louis, 45 Mo. 94, 98, 100 Am. Dec. 352; Town of Pawlet v. Rutland & W. R. Co., 28 Vt. 297, 300; Miller v. Minn. & N. W. Ry. Co., 76 Iowa 655, 659, 39 N. W. 188, 14 Am. St. Rep. 258; Wood, R. R., sec. 388; Donovan v. Construction Syndicate (1893), 1 Q. B. Div., 629; Rourke v. Colliery Co., 2 C. P. Div., 205.'

"All these rules are guides to the proper conclusion from the contract and the situation and conduct of the parties."

In Knight v. Hawkins, 26 Tenn. App. 448, 173 S. W. (2d) 163, 166, this Court quoted with approval from Odom v. Sanford & Treadway, 156 Tenn. 202, 299 S. W. 1045, as follows:

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact. The principal consideration in determining the question is the right to control the manner of doing the work."

In the case at bar, though the evidence of what transpired between Farmer and the used car salesmen is very meager, the jury could well have found that Mr. Farmer reserved the right to terminate the employment of all or any one of the salesmen at any time. Further, Mr. Farmer contemplated that the salesmen would probably drive the car from the lot in demonstrating it to prospective purchasers; in fact, he expressly made the car available to them for such purpose by obtaining and placing thereon a drive-out tag and leaving the keys to the car accessible to them.

There is nothing to suggest that Mr. Farmer ever relinquished his right to control the use of the automobile for demonstration purposes. If it was being driven by one of the fellow salesmen of Mr. Farmer on the day of the accident as insisted by the plaintiff Moore, then certainly Mr. Farmer would have had the right immediately before or after the accident to have regulated and controlled the actions of the salesman in the operation of the automobile even to the extent of terminating his employment and recovering custody of the automobile immediately.

If, indeed, at the time of the accident, the Farmer automobile was being driven by a salesman who was demonstrating the automobile to a prospective purchaser or if it was being driven by the prospective purchaser accompanied by the salesman, in either event the use of the automobile would certainly have been in furtherance of the business of Mr. Farmer and within the scope of employment of the salesman.

Under these circumstances, we do not believe that all reasonable men must agree that such salesman would have been acting as an independent contractor. On the contrary, we think the minds of reasonable men might differ and the question of whether such salesman was acting as an independent contractor should have been submitted to the jury along with the other issues of fact in the case.

Therefore, the assignments of error of the plaintiff will be sustained as to the defendant-in-error, Farmer, and the cause remanded to the Circuit Court for a new trial consistent herewith. The costs will be assessed against Mr. Farmer. Judgment accordingly.

Avery, P. J. (Western Section), and Bejach, J., concur.