MRS. LILLIAN JONES, Plaintiff in Error, v. FORD MOTOR COMPANY, Defendant in Error.

O. L. JONES, Plaintiff in Error, v. FORD MOTOR COMPANY, Defendant in Error.

BENTLEY CANUPS, b/n/f, Plaintiff in Error, v. FORD MOTOR COMPANY, Defendant in Error.

JOYCE CANUPS, b/n/f, Plaintiff in Error, v. FORD MOTOR COMPANY, Defendant in Error. —345 S. W. (2d) 681.

Western Section, Jackson. November 30, 1960.

Certiorari Denied by Supreme Court April 5, 1961.

244

W. C. Rodgers, Memphis, for plaintiffs in error.

Gavin Gentry, Memphis, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel, for defendant in error.

BEJACH, J. The record in these consolidated causes presents an outrageous state of facts which arouses righteous indignation on the part of this Court, and should, in our opinion, have created a like impression on the trial judges before whom these causes, at different stages of same, were heard in the lower court. That it did, on the part of Judge Henderson, is indicated by his remarks made in connection with his granting a nonsuit to plaintiffs and when he reconsidered his ruling and granted defendant's motion for a directed verdict. The parties will be referred to, as in the lower court, as plaintiff and defendant, or called by their respective names.

On June 17, 1959, at about 5:30 a.m. on U.S. Highway 78, about five miles southeast of New Albany, Mississippi, plaintiff O. L. Jones, accompanied by his wife Mrs. Lillian Jones and his two grandchildren, Bentley Canups and Joyce Canups, was driving his Mercury automobile for the purpose of returning said grandchildren to their home in Birmingham, Alabama. At that time, Mr. Jones noticed in his rear view mirror, accor'ding to the allegations of his declaration and the proof adduced, that a car, coming from behind, was approaching at a speed of about 80 to 90 miles per hour and that its driver was apparently making no effort to turn into the left hand lane for the purpose of passing. In that situation, Jones undertook to turn off to the right onto the shoulder of the highway, and had driven the righthand wheels onto the shoulder of the road when he was sideswiped by the other car and knocked completely off the paved surface of the highway. The other car, which was later ascertained to be an Edsel automobile bearing 1959 Tennessee license number 2U-1370, ran on down the highway, completely reversed itself by making a turn to the left, and

returned so as to strike the Jones automobile a second time, after which it came to a full stop. According to the testimony of both Mr. and Mrs. Jones and Joyce Canups, aged 15 years, a man was driving. It was ascertained later, with some difficulty, that this man was James R. Smith; but in his deposition he denied that he was driving and said his woman companion was driving at the time of the accident. The woman companion got out and approached the Jones automobile, but Smith peremptorily ordered her back into his car. Neither the man nor the woman gave any information to the plaintiffs. Smith refused to wait, although Mr. Jones tried to persuade him to remain at the scene of the accident until Highway Patrolmen could be notified. Mr. Smith said he would call the Law, but did not do so. Mr. Jones went so far in trying to detain Smith as to stand in front of his automobile, but stepped aside to avoid being run over. The Jones automobile was completely disabled and all of its inmates sustained injuries, Joyce Canups having had her arm broken.

From the license number which was taken down, it was later ascertained that the offending automobile was an Edsel, registered in the name of the Ford Motor Company at Memphis, Tennessee. According to the testimony of Mrs. Marie Little, deputy County Court Clerk of Shelby County, Tennessee, on June 17, 1959, license number 2U-1370 was issued for and outstanding on a 1959 Edsel belonging to the Mercury-Edsel Division of Ford Motor Company at Memphis, Tennessee; but, on July 27, 1959, it was transferred to a Lincoln automobile, owned by the same Company.

Being unable to obtain any information from the officials at the Mercury-Edsel Division of Ford Motor Com-

pany, suits were filed July 31, 1959 by Mr. and Mrs. Jones and the Canups children against the Ford Motor Company, the owner of the automobile in question. Later on Ocotber 14, 1959, under the provisions of Sections 24-1101 to 24-1107, T.C.A., a petition for discovery was filed, by means of which plaintiffs sought to ascertain the name and address of the operator of the Edsel automobile which had damaged them, the name and address of his female companion, his official position and functions with the Ford Motor Company, where he obtained custody of defendant's automobile, for what purpose and and use he had possession of same, where he went and what use he was making of defendant's automobile, what mission of defendant's he was on at the time of the accident, where he went out of Memphis, and what contacts he made while using defendant's automobile, when and why he returned defendant's automobile, what evidence had been reported to defendant of the collision, and the amount of damage to its automobile resulting from same, where defendant's car was repaired, together with the name and address of the mechanic who repaired same, the extent of damage to defendant's car, and the cost of repairing same.

This petition for discovery came on for hearing before Hon. Friel Hastings, Judge of Division VI of the Circuit Court of Shelby County, before whom the causes were pending at that time, and by order entered October 6, 1959, he granted some but not all of the prayers of said petition for discovery. By his order, defendant was required to disclose only (1) Who its officer, agent and employee or servant was that was driving or operating its Edsel automobile number 2U-1370 on June 17, 1959; (2) The name of the passenger with said driver; and (3) The

mission of the operator and driver of said automobile. One of the appellants' assignments of error complains of the action of Judge Hastings in thus limiting the scope of plaintiffs' discovery and his action will be hereinafter discussed at some length. Meager as was the Court's order for discovery, however, the defendant did not fully and frankly disclose even the limited information which the Court's order required. Instead, it answered only, (1) That the woman driving defendant's automobile on June 17, 1959 was unknown to defendant, but that it was known she had no connection whatsoever with defendant; (2) That the name and address of the passenger with said driver is James R. Smith whose last known address was 3851 Oakhills Drive, Birmingham, Michigan; and (3) That the mission of the operator and driver of said automobile, as far as can be ascertained, was driving James R. Smith to his motel in Memphis, Tennessee, where he was temporarily staying. In our opinion, this answer of the defendant amounts to trifling with the Court, and constitutes reprehensible conduct by its officers, agents, and attorneys. If defendant was not covering up for itself, it is clear that it was trying to cover up for its employee, James R. Smith. Obviously dissatisfied with this answer, as plaintiffs had a perfect right to be, they moved to reject same because, (1) Same in nowise complies with the order requiring defendant to discover; (2) It does not fully or frankly disclose obvious facts and circumstances with reference to the use of its automobile, nor why nor how defendant's employee was using said automobile. Plaintiffs further moved the Court to require defendant to make additional and further pertinent and necessary discoveries, specifying who delivered said automobile to James R. Smith, why he was granted the

use thereof, and for what purpose, where he went, what he did with said automobile, when and where he returned it, specifying the injuries or damages thereto; and that defendant be required to discover how, why and who placed the alleged woman driver in charge of said automobile, and when and where and to whom possession of the automobile was surrendered. On the hearing of this motion of plaintiffs, Judge Hastings, by order entered November 20, 1959, required of defendant that, in addition to such discoveries as had already been made, it disclosed whether or not James R. Smith was an employee, servant, agent or officer of defendant on or about June 17, 1959; and if so, what was his position or capacity with defendant; and also, the name of the person who delivered to James R. Smith defendant's automobile bearing 1959 Tennessee license number 2U-1370. Pursuant to this last named order, defendant on December 17, 1959 filed an answer signed by its attorney Gavin M. Gentry, and sworn to by him, in which it is set out that James R. Smith was an employee of defendant, Ford Motor Company, for a period of time in and around June 17, 1959; that Mr. Smith's position or capacity with defendant was that of a field distribution coordinator; that field distribution coordinators are employees primarily engaged in traveling between the Ford Motor Company headquarters and the various district sales offices, coordinating the distribution of automobile products; but that James R. Smith was not performing any business on behalf of the defendant at the time and place of the automobile accident alleged in plaintiff's declaration. It also contained information that the person who authorized the use of defendant's automobile, number 2U-1370, was Mr. D. C. Evans of the Memphis district office of Ford Motor Company.

Later, under the provisions of Chapter 54, Public Acts of 1959, the plaintiffs took the deposition of J. Robert Smith in an effort to obtain additional discoveries on behalf of plaintiffs; but the testimony of Smith, given in said deposition was so evasive and unsatisfactory that it was not used by plaintiffs. It was, however, read in evidence at the trial, on behalf of defendant.

At the trial, which was held before Judge Floyd M. Henderson of Division IV of the Shelby County Circuit Court, defendant moved, at the conclusion of all of the proof, for a directed verdict in its behalf. This motion, Judge Henderson said he would grant, but while he was elaborating on his reasons therefore, plaintiffs' attorney undertook to take a nonsuit, which Judge Henderson, at that time, permitted. On motion for new trial, however, made by defendant, he reconsidered the matter, decided that the application for nonsuit had come too late, and then granted the motion for a directed verdict in favor of defendant. Plaintiffs thereupon moved for a new trial, which motion was overruled, and they have prayed and perfected their appeals in the nature of writs of error to this Court.

In this Court, plaintiffs, as appellants, have filed three assignments of error, which are as follows:

"I.

"The trial court erred in permitting defendant to limit its discovery, instead of requiring a full disclosure, because the information sought was wholly within the defendant's possession, or availability, and plaintiffs could not possibly get this from any other source, and what was sought was most important and vital. R. pp. 16-22.

## "II.

"The trial court erred in setting aside his action in granting plaintiffs' nonsuit and directing a verdict for defendants, because the court had not finally granted or ultimately disposed of defendant's motion for directed verdict when plaintiffs applied for and were granted nonsuits. R. pp. 188, 190 and 192.

## "III.

"The court erred in not submitting the cases to the jury, because there were such conflicts, contradictions, and patent falsehoods and misrepresentations as to the facts and circumstances, as raised questions of fact determinable by the jury."

We will discuss appellants' assignments numbers II and III before taking up and disposing of Assignment number I. Because Assignment of Error number I is the only assignment of error sustained, we think our reasons for overruling Assignments numbers II and III will throw some light on why we think Assignment of Error No. I should be sustained.

On authority of Graves v. Union Ry. Co., 177 Tenn. 699, 152, S. W. (2d) 1026, and Bellisomi v. Kenny, 185 Tenn. 551, 206 S. W. (2d) 787, we think plaintiffs' motion for a nonsuit came too late. As was said in Bellisomi v. Kenny:

"To sum up, the judge can cut off the right to a non-suit by a definite announcement of his decision, either before or after a discussion of his reasons, and before the formality of directing the jury to return a verdict, or, following the making of the motion and the discussion with respect thereto, if any, he

may withhold a formal announcement of his decision until he makes it in directing the jury to return a verdict. But in either or any event, it is the definite and formal announcement of the decision on the motion for a directed verdict, whenever made, which ends the right to a non-suit, and not the completion of the ceremony of instructing the jury as to the verdict they must return. This is our interpretation of the opinion in Graves v. Union Railway Co., supra. (177 Tenn. 699, 152 S. W. (2d) 1026).''

Bellisomi v. Kenny, 185 Tenn. 556-557, 206 S. W. (2d) 789.

By way of application of the above cited authorities to the facts of the instant case, we quote from the record in the instant case, as follows:

''(At two o'clock p.m., March 30, 1960, the court met, when and where, outside the presence of the jury, the following proceedings were had:)

''The Court: All right, Mr. Gentry, I believe you want to renew your motion.

''Mr. Gentry: Yes, sir, Your Honor. I move at this time, on behalf of the Ford Motor Company, for a directed verdict in its favor at the conclusion of all of the proof.

''(Argument of counsel.)

''The Court: All right, sir, the Court is compelled to, and does, sustain the motion of the defendant for a directed verdict. The Court is of the opinion that it makes little or no difference which law applies to this case, so far as this motion is concerned. In

other words, it appears that the Mississippi law and the Tennessee law, in substance, are the same. If the proof shows ownership on registration, then that makes out a prima facie case to the effect that the car was being operated on or about the business of the proven owner, or the registered owner.

"Now, the plaintiffs have had the benefit of that presumption either under the Tennessee law or under the Mississippi law. That puts the burden on the defendant of coming forward and showing that the operator of that car involved in a collision was not on the business of his employer and the owner of the car. I don't see how any reasonable-minded men could draw any conclusion other than this employee, the driver of that car, and we will assume he was the driver of that car, was not on the business of his employer, when the uncontradicted proof on all material issues shows that this man Smith was an employee of the Ford Motor Company, correlator, I believe, or a field representative, that he came from Detroit down to the Memphis District Office on the day before, or two days before—it is immaterial—on company business, that he asked for and was loaned an automobile for his own personal use. Of course, if he had taken that car out and used it on company business, that would be a different proposition, but the proof is contrary. The uncontradicted proof shows that on the evening before the morning of June 17, he met up with some girl over here in West Memphis at a dance hall. I believe he testified to the effect it was sometime around midnight. They started drinking heavily. I don't know whether he said the girl was drinking much or not. He was out

on a party with an undisclosed woman; that they wound up down here about five miles south of New Albany. He was in a dazed condition, a drunken condition, driving at a terrific rate of speed. It makes no difference whether he was driving or the woman was driving, see, and these people over here were the victims of that man's misconduct. They were struck twice.

"Now, certainly, this Court cannot let this case go to the jury on the question of whether or not this man Smith was on or about the company's business at the time this collision occurred.

"There are discrepancies in the defendant's proof. I have never tried a case where there weren't some discrepancies. If I had one in here where there were no discrepancies, I would be very suspicious. There is a discrepancy as to whether the woman or man was driving, and I don't think that makes any difference from the standpoint of liability. There are cases holding where there is a discrepancy on a material issue, but certainly relative to the issues involved here, whether or not the driver of the car was on or about the employer's business, and I don't see how any sensible-minded man can rationalize the situation any differently or reach any different conclusion. It is most unfortunate for these people that they were involved in that wreck down there by a car that was owned by the Memphis Ford Motor Company, or the Ford Motor Company. Mere ownership of the car itself does not impose liability upon the owner. The car is loaned to someone, and that person is guilty of negligence, then the owner of the car is not liable for the negligence of the defendant.

"Mr. Rodgers: Your Honor, will you allow me to take a non-suit in this matter?

"The Court: Do you have any objection? I think it is largely discretionary with the Court.

"Mr. Gentry: Yes, sir, we do object to it. I think Your Honor has already sustained the motion.

"The Court: I have sustained the motion, Mr. Rodgers, and I believe you are a little late. I don't see how you can prove your case any differently.

"Mr. Rodgers: Yes, I think probably, if the Court please, I could improve my situation substantially after what proof we have here.

"The Court: I will say this. If I could allow you to take a nonsuit, I would, but I think after sustaining the motion, it is too late.

"Mr. Rodgers: Well, Your Honor hadn't finished rendering your opinion.

"The Court: That is true.

"Mr. Rodgers: Your Honor had not concluded your opinion, and I think I have a right to take a nonsuit.

"The Court: I haven't concluded my opinion.

"Mr. Gentry: We object to his taking a nonsuit.

"The Court: I am going to let him take a nonsuit, and due to the fact that this is an unusual case. These people have been hurt due to no fault of their own. I am going to explain to the jury you were compelled to take a nonsuit.

"Mr. Gentry: Note an exception.

"The Court: I think every opportunity should be given these people to get some redress somewhere."

■ It is apparent to us from the above quoted portion of the record in the instant case that Judge Henderson had definitely announced his decision granting the motion for a directed verdict before the application for a non-suit was made, and consequently that the application for the taking of a nonsuit came too late. In any event, the matter was within the breast of the court until the hearing of defendant's motion for a new trial, at which time it was proper for him to do as he did, namely, grant defendant's motion for a new trial and sustain its motion for directed verdict made at the trial, which directed verdict must, however, be set aside and a new trial ordered because of our sustaining Assignment of Error number I, as will hereinafter more fully appear.

Assignment of Error number II is accordingly overruled.

■ It is the contention of appellants, under Assignment of Error number III that they had established a prima facie case under the provisions of Section 59-1037, as amended by Chapter 123, Public Acts of 1957, and Section 59-1038, T. C. A., and that there was so much contradiction between the testimony of defendant's witnesses, L. C. Evans and James Robert Smith, and that said witnesses, especially James Robert Smith, were so completely discredited that plaintiffs were entitled to go to the jury under the prima facie case established by said statutory provisions.

Section 59-1037, as amended by Chapter 123, Public Acts of 1957, now reads as follows:

"In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this State, proof of ownership of such vehicle, shall be prima facie evidence that said vehicle at the time of the cause of action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose, and such proof of ownership likewise shall be prima facie evidence that said vehicle was then and there being operated by the owner or by the owner's servant, for the owner's use and benefit and within the course and scope of his employment. This section is in the nature of remedial legislation, and it is the legislative intent that it be given a liberal construction."

Section 59-1038, T. C. A., provides, as follows:

"Proof of the registration of said motor propelled vehicle in the name of any person, shall be prima facie evidence of ownership of said motor propelled vehicle by the person in whose name said vehicle is registered; and such proof of registration shall likewise be prima facie evidence that said vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment."

These Code sections, including the amendment of 1957, establish a prima facie case under Section 59-1037, T. C. A. on proof of ownership by any competent evidence, of like character as the prima facie case established by

Section 59-1038, T. C. A. which requires the proof of ownership to be established by proof of registration. These Code sections have been construed by the Supreme Court in East Tenn. and Western N. C. Motor Transport Co. v. Brooks, 173 Tenn. 542, 121 S. W. (2d) 559, and Midwest Dairy Products Co. v. Esso Standard Oil Co., 193 Tenn. 553, 246 S. W. (2d) 974, and by this Court in Southern Motors, Inc. v. Morton, 25 Tenn. App. 204, 154 S. W. (2d) 801, in which cases it was held that the statutory presumption was rebutted and eliminated when any credible and uncontradicted or unimpeached testimony on the subject was offered. As was said by this Court, however, speaking through Carney, J., in Moore v. Union Chevrolet Co., 46 Tenn. App. 206, 326 S. W. (2d) 855, 859:

> "Stated generally these cases hold that the statutory presumption casts upon the defendant the burden of going forward with the proof and upon the introduction of credible evidence upon the subject, the statutory presumption disappears. However, if there is any substantial evidence upon which the jury can discredit the witness by his own statements or by other contradictory proof, and there is no other uncontradicted credible evidence upon the subject, the statutory presumption remains in the case. McMahan v. Tucker, 1948, 31 Tenn. App. 429, 442, 216 S. W. (2d) 356; Smith v. Phillips, 1957 [43 Tenn. App. 364], 309 S. W. (2d) 382."

In the instant case, it is contended that defendant's witnesses, James Robert Smith and L. C. Evans, contradict each other to such an extent, and are so discredited by their own testimony that this case would have been submitted to the jury on the question of whether or not

the statutory presumption had been rebutted or elimi-
nated.

We agree with counsel for plaintiffs that James Robert
Smith might properly have been considered by the jury
as a completely discredited witness. In his deposition,
taken at Tulsa, Oklahoma on February 23, 1960, he gave
his address as 594 S. Birmingham, but said he had pre-
viously resided at Birmingham, Michigan. He said he
had been employed for about five months by the Dicken-
son Development Co., but had previously been employed
by the Ford Motor Company, having remained in its em-
ployment until about August 31, 1959. He said he had
been transferred to the distribution department through-
out the United States. He said his primary duty was to
more or less audit what the distribution manager was
doing and kept his records in conformance with instruc-
tions out of the home office. He said he traveled by plane
from city to city, but that on reaching a distribution office,
he was furnished an automobile if it was available. He
said he was given the car to get him back and forth from
where he was staying to the district office. He admitted
that on occasions he called on dealers to see if they were
satisfied with the way they were getting their automo-
biles, the way they were having their orders taken, or if
they were getting exactly the cars they had been order-
ing. With reference to the automobile involved in the in-
stant case, he said, "The car was given to me—was not
given to me, but was assigned to me, I guess, for my use.
They let me use it to get back and forth to my motel
whenever I was caling on the Memphis district office."
He said he came directly from the home office to Mem-
phis and had had the automobile for about two days.
With reference to the automobile which he was driving

at the time of the accident, he said it was a Mercury and not an Edsel; that he was not driving same, but that a young woman whom he had picked up at a night club across the River from Memphis was driving; but that he did not know her name nor address, and did not know where he had put her out in Memphis after the accident. He admitted having driven away after the accident. He said he had returned to Memphis after the accident and had stayed in his motel, Holiday Inn, another day; after which he drove to Grove, Oklahoma where he spent the night and then drove on to Tulsa, where he turned the automobile in to the "Fred Jones Lincoln and Mercury". He said that he did not pay for the repair of the automobile. He said the left hand side (the driver's side) of the defendant's car was badly damaged. He admitted that on occasion he had driven from one place to another, and specified that on one occasion he had driven from Kansas City down to Grove, Oklahoma. With reference to driving to dealers, he said, "On occasion, I believe I stated this before, and it was something that we wanted to do more of later on, but we hadn't gotten into it, but I have had occasion to go with the distribution manager of a particular district office and call on a dealer to question that dealer about the distribution operation out of that particular district office as it related to the dealer"; but he denied that he contacted any dealers out of Memphis when he was in that district office. Smith stated that he was a married man with four children.

Mr. L. C. Evans, administrative manager of the Lincoln-Mercury Division of Ford Motor Company in Memphis, Tennessee, testified that Mr. Smith was, on June 17, 1959 an employee of the Ford Motor Company in the capacity of distribution coordinator, working out of the

general sales office in Dearborn, Michigan; that his work was primarily to regulate the distribution of orders equitably among the districts. He said that Smith initiated his request for an automobile while in Memphis through the distribution manager, but that he, Evans, finally passed on whether or not a Company car should be loaned to Mr. Smith; and that he approved the loan of the Company car to Mr. Smith at that time. He said the car was loaned to Mr. Smith to use as transportation back and forth to the motel where he was staying, which was the Holiday Inn on Lamar. He said he first heard of the accident on the morning of the 17th of June, 1959 when plaintiffs' attorney, Mr. Rodgers, called him telling him that one of the Company's cars was involved in an accident. He said he tried to get in contact with Mr. Smith, but that he had not reported back in the morning; that he was due in the office at 8 o'clock that day, and that he asked the motel and found that he (Smith) had checked out that morning with no forwarding address. He said the car turned up in Tulsa, Oklahoma. He said no authority had been given to Smith to take the car to Tulsa. He said that New Albany, Mississippi is in the territory of the Memphis office, but he said that at the time of the accident, Mr. Smith was not on any business of the Company. He said it was not customary for automobiles to be furnished to representatives of the home office to be used in visiting dealers, but that if a car was available that representatives get it. He said that if Mr. Smith wanted to check on some transactions of the district offices with dealers, he had a right to do so. On cross examination, he said he did not recall telling Mr. Rodgers that Smith would be back in the Memphis office in five days; that he said the accident was not reported through

the Memphis office. In answer to a question on whether or not Mr. Smith was on or about any business for the Ford Motor Company, Mr. Evans answered over the objection of counsel for plaintiffs, "He was not on company business under our direction, I would say."

It is contended by counsel for appellants that Smith and Evans contradict each other about whether Smith returned to Memphis a day after the accident, Smith testifying that he came back to Memphis and remained a whole day, whereas Evans testified that on the morning of June 17, 1959 he checked at Smith's motel and found he had checked out without a forwarding address, and because Smith testified that it was a Mercury he was driving, whereas the County Clerk's records showed it was an Edsel, that the jury should have been permitted to discredit both of them, and leave the presumption afforded by the recordation in the County Court Clerk's office in effect. We cannot agree with this contention. We are perfectly willing to accept the view of counsel for appellants that Smith should be considered a discredited witness; but we find nothing in the record to warrant a conclusion that Evans has been discredited on any material matter, and especially not on the material issue of whether Smith was using defendant's automobile on company business at the time of the accident. Whether Evans or Smith is correct, and whether Smith did or did not come back to Memphis and remain a whole day after the accident, can throw no light on the vital question of whether or not Smith was, at the time of the accident, on or about the business of the Ford Motor Company and acting within the scope of his employment. If we were to eliminate completely the testimony of Smith, there would still remain the testimony of Evans that the de-

fandant's automobile was not loaned to Smith for any use consistent with his having been with same five miles southeast of New Albany, Mississippi, and especially so when Smith was accompanied by a woman whom he says he picked up at a night club in West Memphis, Arkansas. The greater probabilities seem to indicate that Smith was not at that time, and in that place, on business of the Ford Motor Company, although from the testimony of both Evans and Smith, himself, it is still possible that he might have been. Nevertheless, to have submitted issues of this lawsuit, and especially the one of whether or not Smith was on business of the Ford Motor Company, to a jury would have permitted the jury in such case to speculate beyond the limits fixed by our decisions.

The fault lies not with Judge Henderson's having granted a direct verdict in favor of the defendant, but with Judge Hastings' limitation of the discovery required of the defendant, which might, if not limited as it was, have furnished evidence warranting a submission of this issue to the jury.

Assignment of Error number III is overruled.

█ We now take up Assignment of Error number I which complains of the limitation by Judge Hastings of the discovery sought by plaintiffs from the defendant, and our ruling on this is that Judge Hastings committed reversible error.

It is obvious to us that there must be some explanation of why Smith, with defendant's approval, turned in at Tulsa, Oklahoma, the automobile loaned to him by the Memphis office instead of returning same at Memphis, and why for about two and a half months thereafter, the

Ford Motor Company continued to employ him. He must have made some report of the accident, and explained why the car was being returned at Tulsa instead of at Memphis, and in the damaged condition in which it then was, and it may be that his circuitous route to Tulsa and belated turning in of the car there instead of Memphis had some connection with the defendant's business. Such report or other information furnished by Smith to the Ford Motor Company might or might not have disclosed that on the 17th of June, 1959, and at the time and place of the accident here involved, Smith was on business of the Ford Motor Company and acting within the scope of his employment; but whether or not this is true, it is our opinion that plaintiffs were entitled to this information, and under the restricted discovery required by Judge Hastings' orders for discovery, defendant was not required to furnish it. It is therefore, our opinion that Assignment of Error number I should be sustained.

On behalf of defendant and appellee, it is contended that the information sought by plaintiffs' petition for discovery was immaterial to any issue in plaintiffs' case, and that the information sought by the discovery could have been obtained by plaintiffs from other sources, and consequently, that Judge Hastings did not err in denying or limiting the petition for discovery. In support of this contention, counsel for defendant cites Whitesides v. Lafferty, 28 Tenn. 27; Lindsley v. James, 43 Tenn. 477; and Keys v. Keys, 170 Tenn. 624, 98 S. W. (2d) 111. We cannot agree with this contention. The discovery sought was a "discovery at law" provided for by Section 24-1101 et seq., T. C. A., and we cannot see how plaintiffs could have obtained information on the vital issue of whether Smith was on or about the Ford Motor Com-

pany's business from any other source, except the Ford Motor Company, its officers, agents and employees. Section 24-1101, T. C. A. provides:

"Either party to a suit at law is entitled to a discovery from the other party of any matters material to the issue of such suit, in all cases where the same party would, by the rules of equity, be entitled to a discovery in aid of such suit."

The discovery at law sought under the above quoted Statute was independent of the provisions of Chapter 54, Public Acts of 1959 which authorizes the taking of discovery depositions, although the provisions of that Statute may be looked to in ascertaining the public policy of the State of Tennessee in regard to such discoveries. Later, the deposition of James R. Smith was taken under the provisions of Chapter 54, Public Acts of 1959, but his testimony was so obviously evasive, equivocal and untruthful as to make same worthless to plaintiffs, and same was not used by them. If a full, fair, and frank disclosure of the facts within the knowledge of defendant Ford Motor Company, its officers, agents and employees had been made in response to the discovery sought by plaintiffs, it would probably have been unnecessary to take the deposition of Smith, under provisions of Chapter 54, Public Acts of 1959.

But, again, it is argued, on behalf of defendant, that plaintiffs were not entitled to the discovery sought, because such discovery may not be properly had from a corporation without making some of its officers parties thereto; and in support of this contention, they cite Lindsley v. James, 43 Tenn. 477; American Lead Pencil Co. v. Musgrave Pencil Co., Inc., 170 Tenn. 60, 91 S. W.

(2d) 573; and Home Indemnity Co. of New York v. Bogue, 168 Tenn. 493, 79 S. W. (2d) 580. These authorities would sustain this contention of defendant if, in the first instance, it had resisted the granting of the discovery on that ground. Since, however, defendant waived this objection when the discovery was applied for, and actually responded thereto in the form of answers signed and sworn to by its attorney of record, we think the defendant must be held to have waived this objection to the manner and form in which the discoveries were sought by plaintiffs. On remand for new trial, this objection may be obviated by permitting plaintiffs to add as parties to the petition for discovery, any officers, agents or employees of the Ford Motor Company who may be thought to be in a position to throw light on the subject,—from the president of the Company on down.

Assignment of Error number I is sustained.

It results that the judgment for defendant in this cause must be reversed, and the cause remanded for further proceedings in the lower court, in conformity with this opinion.

The costs of the cause will be adjudged against the defendant, Ford Motor Company.

Avery, P. J. (W. S.), and Carney, J., concur.